992 So.2d 120 (2008)
Richard HENYARD, Appellant,
v.
STATE of Florida, Appellee.
Richard Henyard, Appellant,
v.
State of Florida, Appellee.
Richard Henyard, Petitioner,
v.
Walter A. McNeil, etc., Respondent.
Nos. SC08-222, SC08-1544 & SC08-1653
Supreme Court of Florida.
September 10, 2008.
*122 Bill Jennings, Capital Collateral Regional Counsel, Mark S. Gruber, Maria Perinetti, and Daphney Branham, Assistant CCR Counsel, Middle Region, Tampa, Florida, for Appellant.
Bill McCollum, Attorney General, Tallahassee, Florida, and Stephen D. Ake, Assistant Attorney General, Tampa, Florida, for Appellee.
PER CURIAM.
This case is before the Court on appeal from orders denying motions to vacate sentences of death under Florida Rule of Criminal Procedure 3.851 and on the petition of Henyard invoking the Court's authority to issue all writs necessary to complete the exercise of its jurisdiction. Because the order concerns postconviction relief from a sentence of death, this Court has jurisdiction of the appeal under article V, section 3(b)(1), Florida Constitution. Additionally, we have jurisdiction over the petition under article V, section 3(b)(7), Florida Constitution. We affirm the trial court's orders and deny Henyard's petition for all writs relief.

Facts and Procedural History
The facts of this case are set out in detail in our previous opinion. See Henyard v. State, 689 So.2d 239 (Fla.1996). In that opinion we noted that the trial record established that Richard Henyard (Henyard), at the age of eighteen, took a gun that belonged to a family friend and told others he was going to steal a car, kill the owner, and put the victim in the trunk so he could go see his father in South Florida. Henyard convinced a younger, fourteen-year-old friend, Alfonza Smalls, to help him rob someone. On January 30, 1993, Henyard and Smalls waited outside of a Winn-Dixie store in Eustis, Florida, when their victims, Mrs. Dorothy Lewis and her daughters, Jasmine, age three, and Jamilya, age seven, who were shopping at the Winn-Dixie, returned to their car. As the three left the store and returned to their car, Smalls approached Lewis with a gun and ordered her and her daughters into the back of the car. Henyard drove the car out of town.
Henyard stopped the car at a deserted location where the two boys raped Lewis on the trunk of the car while her daughters remained in the back seat. Afterward, Henyard shot Lewis four times, wounding her in the leg, neck, mouth, and the middle of the forehead between her eyes. Henyard and Smalls rolled Lewis's unconscious body off to the side of the road and got back in the car. Jamilya and Jasmine were then driven to a separate location and taken from the car into a grassy area where they were each shot in the head and killed. Lewis survived and was able to make it to a nearby house where the police were called.
At trial, Richard Henyard, Jr. was convicted of three counts of armed kidnapping, one count of sexual battery with the use of a firearm, one count of *123 attempted first-degree murder, one count of robbery with a firearm, and two counts of first-degree murder. After the penalty phase hearing, the jury recommended the death sentence for each of the murder counts by a vote of twelve to zero. The court found four aggravating factors, [n. 1] three statutory mitigating factors, [n. 2] and six nonstatutory mitigating factors. [n. 3] The court found that the mitigating circumstances did not outweigh the aggravating circumstances and sentenced Henyard to death.
[N.1.] The trial court found the following aggravating factors: (1) the defendant had been convicted of a prior violent felony; (2) the murder was committed in the course of a felony; (3) the murder was committed for pecuniary gain; and (4) the murder was especially heinous, atrocious or cruel.
[N.2.] The trial court found the following statutory mitigating factors: (1) Henyard's age of eighteen at the time of the crime; (2) evidence that Henyard was acting under an extreme emotional disturbance; and (3) Henyard's capacity to conform his conduct to the requirements of law was impaired.
[N.3.] The trial court found the following nonstatutory mitigating circumstances: (1) the defendant functions at the emotional level of a thirteen-year-old and is of low intelligence; (2) the defendant had an impoverished upbringing; (3) the defendant was born into a dysfunctional family; (4) the defendant can adjust to prison life; (5) the defendant could have received eight consecutive life sentences with a minimum mandatory of fifty years; and (6) Henyard's codefendant, Smalls, could not receive the death penalty as a matter of law.
This Court rejected all eleven [n. 4] of Henyard's claims on direct appeal and affirmed his conviction and sentence.
[N.4.] The eleven claims were: (1) the trial court abused its discretion in failing to grant Henyard's motions for a change of venue; (2) the trial court erred when it (a) granted the State's challenge for cause of one prospective juror (who stated he could not, under any circumstances, recommend a death sentence for Henyard because of his youth), and (b) refused to excuse three prospective jurors Henyard challenged for cause; (3) the trial court erred in denying Henyard's motions to suppress his statement to the police because the interrogating officers failed to honor Henyard's request to cease questioning in violation of his right to remain silent under article I, section 9 of the Florida Constitution; (4) the trial court abused its discretion in admitting DNA evidence which was not supported by a proper predicate of reliability; (5) the trial court erred by (a) allowing the State, during voir dire, to tell prospective jurors that if the evidence of aggravators outweighed the evidence of mitigators then the jury's sentence recommendation must be for death as a matter of law, and (b) suggesting during closing argument that Henyard never admitted to raping Lewis when, in fact, he did confess to raping her in his third confession to police on the day after the murders; (6) the trial court erred in allowing a police officer to testify as to hearsay statements Lewis made to him when he came to her aid after the offense; (7) the trial court erred by giving the standard jury instructions on premeditated murder and reasonable doubt, and by failing to give the jury a special verdict form on the *124 theory of guilt; (8) the trial court erred during the penalty phase by (a) instructing the jury on the avoid arrest aggravator, (b) expressly considering as an aggravator, and allowing the jury to hear, evidence of Henyard's prior juvenile adjudication for robbery with a weapon, and (c) allowing Lewis and Leroy Parker to testify at the penalty phase because their testimony did not tend to prove any statutory aggravating circumstance; (9) the trial court abused its discretion in denying Henyard's specially requested penalty-phase jury instruction on the heinous, atrocious or cruel aggravating circumstance, which instructed on "tortuous [sic] intent," and further erred by giving the standard heinous, atrocious or cruel instruction, which is unconstitutionally vague and overbroad; (10) the trial court erred by relying upon two aggravating circumstances-pecuniary gain and heinous, atrocious or cruel-as support for Henyard's death sentences because they were not proven beyond a reasonable doubt; and (11) the death penalty is not proportionally warranted in this case.
Henyard v. State, 883 So.2d 753, 756-57 (Fla.2004). Smalls escaped the risk of the death penalty because of his young age. 689 So.2d at 254. After we affirmed his convictions, Henyard then filed a postconviction motion raising nine claims.[1] The trial court denied relief and Henyard appealed to this Court. We affirmed the trial court's denial and denied Henyard's petition for habeas corpus. 883 So.2d at 766. The federal courts have also denied his claims. See Henyard v. Crosby, No. 504CV6210C10GRJ, 2005 WL 1862694, 2005 U.S. Dist. LEXIS 45525 (M.D.Fla. Aug.2, 2005), aff'd sub nom. Henyard v. McDonough, 459 F.3d 1217 (11th Cir. 2006); cert. denied, ___ U.S. ___, 127 S.Ct. 1818, 167 L.Ed.2d 328 (2007).
On July 9, 2008, Governor Charlie Crist signed a death warrant, setting Henyard's execution for 6 p.m., September 23, 2008. Prior to the signing of the death warrant, on October 18, 2007, Henyard had filed a motion to vacate sentence in the trial court. Henyard's motion raised four claims: (1) newly discovered evidence proves Florida's method of lethal injection violates the Eighth Amendment, (2) section 27.702, Florida Statutes is unconstitutional, (3) section 945.10, Florida Statutes is unconstitutional, (4) Florida's death penalty scheme is unreliable and violates the Eighth Amendment based on a September 17, 2006, report of the American Bar Association. On January 8, 2008, the trial court issued on order summarily denying each of Henyard's claims. Additionally, during the pendency of the appeal from that order, Henyard filed a motion to relinquish jurisdiction. We denied Henyard's motion, but provided that Henyard could file a successive postconviction motion to *125 vacate with the circuit court. On August 4, 2008, Henyard filed a successive motion to vacate sentence and for stay of execution raising three claims: (1) newly discovered evidence renders Henyard's death sentence unconstitutionally reliable, (2) Henyard's cumulative mental and emotional deficits establish a constitutional bar to his execution, and (3) Henyard's mental illness at the time of the offense renders his death sentence and execution unconstitutional. On August 14, 2008, the circuit court issued an order summarily denying each of the claims without an evidentiary hearing. We now consider both appeals as well as a petition for all writs relief filed by Henyard in this Court.

Analysis
We first address Henyard's claim that newly discovered evidence renders his death sentence unreliable. We agree with the trial court that Henyard has been unable to demonstrate prejudice, even if the claim is not procedurally barred and the proffered new evidence were admissible at trial. We next address Henyard's claim that section 27.702, Florida Statutes, is unconstitutional as construed in our decision in Diaz v. State, 945 So.2d 1136 (Fla. 2006). We find Henyard provides no basis for this Court to reconsider our holding in Diaz. Finally, we address and reject Henyard's other claims.

Newly Discovered Evidence
Henyard raises a claim of newly discovered evidence based on an affidavit by Jason Nawara. While in custody in 1993, Nawara was allegedly housed with Henyard's fourteen-year-old codefendant, Alfonza Smalls. During this time Nawara claims to have overheard Smalls refer to himself as a "killa." Henyard contends this new evidence establishes Smalls as the shooter of the two Lewis children and diminishes his culpability in the murders of the two children; and further asserts he could not have discovered Nawara's testimony earlier because his name was contained in a transcript of an interview of another juvenile, Jimmy Kennedy, and that all the records relating to the juveniles were sealed. Having only recently discovered this transcript, Henyard's counsel alleges he contacted Nawara and received the affidavit that forms the basis of his claim. However, even if we accept Henyard's allegations as true, we find that the record affirmatively refutes Henyard's claim of reduced culpability and the claim does not meet the prejudice requirement under Jones v. State, 591 So.2d 911, 915 (Fla.1991).
The denial of this claim is reviewed de novo. See Van Poyck v. State, 961 So.2d 220, 224 (Fla.2007) ("Because the trial court denied Van Poyck's motion solely on the basis of the pleadings, making a legal rather than a factual determination, this Court evaluates each of these matters de novo." (citing State v. Coney, 845 So.2d 120, 137 (Fla.2003))).
To prevail on a claim of newly discovered evidence, Henyard must meet two requirements: First, the evidence must not have been known to the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. See Jones v. State, 709 So.2d 512, 521 (Fla.1998). If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence. See Jones, 591 So.2d at 916. When determining whether an evidentiary hearing is required on a successive rule 3.851 motion, the court may look at the entire record. "If the motion, files and records in the case conclusively *126 show that the movant is entitled to no relief, the motion may be denied without an evidentiary hearing." Fla. R.Crim. P. 3.851(f)(5)(B). Although evidentiary hearings are not automatic, courts are encouraged to liberally allow hearings on timely raised claims that commonly require factual determinations. See Amend. to Fla. Rule of Crim. Pro. 3.851, 797 So.2d 1213, 1219 (Fla.2001).
Although it is unclear from the record whether Henyard can meet the due diligence requirement under the first prong of Jones,[2] we address the second prong requiring a showing of a probability of a different outcome, i.e., in this case a life sentence rather than death. Initially, we note this claim faces a number of hurdles including a potential procedural bar and a serious question of admissibility of the new evidence. Regardless, even if those hurdles could be overcome, we agree with the trial court that Henyard is not able to demonstrate prejudice. At trial, the State did not rely on Henyard being the triggerman, but rather relied on his dominant role in the entire criminal episode and unrefuted evidence of his close proximity to the child victims at the time of their deaths. The record affirmatively supports the State's position that regardless of whether Smalls or Henyard pulled the trigger, Henyard's substantial culpability as outlined by the trial court in great detail and as reflected in our opinion affirming his death sentence establishes the death penalty as a proportionate sentence for his actions. Even if Nawara's hearsay testimony was somehow deemed admissible at trial,[3] we conclude Nawara's statement does not cast doubt on Henyard's culpability or death sentence for the murders. Henyard planned the carjacking. Henyard, 689 So.2d at 242. Henyard raped and shot Dorothy Lewis. Id. at 243. The unrebutted evidence established that Henyard was in immediate proximity when Jasmine and Jamilya Lewis were shot. Id. As noted by the trial court in its order, the overwhelming evidence of Henyard's dominant role makes his current assertion that he was a "relatively minor participant" both unbelievable and without credibility. Our explanation in Henyard's direct appeal of Smalls' comparative life sentence also becomes relevant:

*127 Like Henyard, Alfonza Smalls was tried on the same charges and convicted, but he was not subject to the death penalty because his age of fourteen at the time of the offense prevented him from receiving the death penalty as a matter of law. Rather, Smalls received the maximum sentence possible for his crimes  eight consecutive life sentences, with a fifty-year mandatory minimum for the two first-degree murder convictions.
In Allen v. State, 636 So.2d 494, 497 (Fla.1994), we held that the death penalty is either cruel or unusual punishment under article I, section 17 of the Florida Constitution if imposed upon a person who is under the age of sixteen when committing the crime. That is, when a defendant is under the age of sixteen, his or her youth is such a substantial mitigating factor that it cannot be outweighed by any set of aggravating circumstances as a matter of law.
In this context, then, Smalls' less severe sentence is irrelevant to Henyard's proportionality review because, pursuant to Allen, the aggravation and mitigation in their cases are per se incomparable. Under the law, death was never a valid punishment option for Smalls, and Henyard's death sentences are not disproportionate to the sentence received by his codefendant. Cf. Larzelere v. State, 676 So.2d 394 (Fla.1996) (holding that codefendant's acquittal was irrelevant to proportionality review of defendant's death sentence because codefendant was exonerated from culpability as a matter of law).
Henyard v. State, 689 So.2d 239, 254-55 (Fla.1996).
Hence, considering the totality of evidence and even if Smalls was determined to be the triggerman, the death penalty would not be a disproportionate sentence for Henyard. See Cardona v. State, 641 So.2d 361 (Fla.1994); Larzelere v. State, 676 So.2d 394 (Fla.1996) (holding that codefendant's acquittal was irrelevant to proportionality review of defendant's death sentence because codefendant was exonerated from culpability as a matter of law); Cave v. State, 476 So.2d 180 (Fla.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986) (death sentence proportionate where co-perpetrators abducted, raped, and killed victim and defendant was not actual killer). Accordingly, it is not probable that this evidence, if true, would have resulted in a less severe penalty.[4]
Based on the foregoing factual analysis, we conclude the trial court did not err in summarily denying relief. See Hodges v. State, 885 So.2d 338, 355 (Fla.2004) ("A defendant is not entitled to an evidentiary hearing if the postconviction motion is legally insufficient on its face.") (citing Freeman v. State, 761 So.2d 1055, 1061 (Fla. 2000)); Tompkins v. State, 980 So.2d 451, 458-59 (Fla.2007) (where this Court held that an affidavit contradicting part of the trial testimony, but not providing credible new evidence that another person may have committed the murder, was insufficient to require an evidentiary hearing) (citing Swafford v. State, 679 So.2d 736, 739 (Fla.1996)), cert. denied, ___ U.S. ___, 128 S.Ct. 895, 169 L.Ed.2d 747 (2008); Diaz, 945 So.2d at 1145-46 (this Court affirmed sentence where claim of newly discovered evidence was affidavit of a trial witness who stated he had not heard Diaz *128 say he shot the victim as he testified at trial, but had inferred it from his hand motions).

Section 27.702, Florida Statutes
Henyard next argues that section 27.702, Florida Statutes, as interpreted in State ex rel. Butterworth v. Kenny, 714 So.2d 404 (Fla.1998), unconstitutionally limits a capital defendant's right to counsel.[5] We find there is no basis to challenge our opinion in Diaz, rejecting a similar claim. In Diaz, the condemned prisoner filed a petition under the Court's all writs authority claiming that section 27.702 was facially unconstitutional because this Court had held that Capital Collateral Regional Counsel (CCRC) attorneys cannot file section 1983 civil rights damages actions in federal court. 945 So.2d at 1154. This Court found the claim to be without merit, stating that Diaz had misinterpreted the Supreme Court's decision in Hill v. McDonough, 547 U.S. 573, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006), as prohibiting challenges to lethal injection procedures in all but section 1983 actions. 945 So.2d at 1154.
In Hill, the defendant filed a federal action under section 1983 to challenge the lethal injection procedure as cruel and unusual punishment. The federal district court and the Eleventh Circuit Court of Appeals both denied Hill's claim, holding that his section 1983 claim was the functional equivalent of a habeas petition. Because Hill had sought federal habeas relief earlier, his section 1983 action was deemed successive and thus procedurally barred. Hill, 126 S.Ct. at 2097. However, the United States Supreme Court reversed and held that a challenge to the constitutionality of the lethal injection procedure did not have to be brought in a habeas petition, but could proceed under section 1983. Id. at 2098. However, contrary to Diaz's assertions here, the United States Supreme Court did not hold that a constitutional challenge to lethal injection procedures could not be brought under a habeas petition.
Diaz, 945 So.2d at 1154. Subsequently, in In re Schwab, 506 F.3d 1369 (11th Cir. 2007), the Eleventh Circuit dismissed Schwab's petition as moot, stating:
Even if [a claim challenging the constitutionality of Florida's lethal injection protocols] were properly cognizable in an initial federal habeas petition, instead of in a 42 U.S.C. § 1983 proceeding, see generally Hill v. McDonough, 547 U.S. 573, 126 S.Ct. 2096, 2099, 165 L.Ed.2d 44 (2006); Nelson v. Campbell, 541 U.S. 637, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004), Rutherford v. McDonough, 466 F.3d 970, 973 (11th Cir.2006) (observing that pre-Nelson circuit law requiring challenges to lethal injection procedures to be brought in a § 2254 proceeding is "no longer valid in light of the Supreme Court's Hill decision"), this claim cannot serve as a proper basis for a second or successive habeas petition. It cannot because it neither relies on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, 28 U.S.C. § 2244(b)(2)(A), nor involves facts relating to guilt or innocence, see 28 U.S.C. § 2244(b)(2)(B)(ii).
506 F.2d at 1370. We conclude that In re Schwab does not undermine or call into question this Court's decision in Diaz. Accordingly, even if this Court ignores Henyard's procedural bar, this matter has been previously resolved by Diaz contrary *129 to Henyard's assertion. Accordingly, Henyard's argument is without merit.[6]

Florida's Method of Lethal Injection
Henyard also alleges that Florida's method of lethal injection as implemented by the August 2007 protocols is unconstitutional under the Eighth Amendment. Henyard argues that although we have previously rejected this claim in Lightbourne v. McCollum, 969 So.2d 326 (Fla. 2007), cert. denied, ___ U.S. ___, 128 S.Ct. 2485, 171 L.Ed.2d 777 (2008), and Schwab v. State, 969 So.2d 318 (Fla.2007), cert. denied, ___ U.S. ___, 128 S.Ct. 2486, 171 L.Ed.2d 777 (2008), we should revisit our decision based on the United States Supreme Court's ruling in Baze v. Rees, ___ U.S. ___, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008). We decline to do so.
In Lightbourne, this Court found in respect to the August 2007 protocols "that Lightbourne has not shown a substantial, foreseeable or unnecessary risk of pain in the DOC's procedures for carrying out the death penalty through lethal injection that would violate the Eighth Amendment protections." 969 So.2d at 353; see also Schwab v. State, 969 So.2d 318, 325 (Fla. 2007), cert. denied, ___ U.S. ___, 128 S.Ct. 2486, 171 L.Ed.2d 777 (2008). As this Court stated in Schwab, "Given the record in Lightbourne and our extensive analysis in our opinion in Lightbourne ... we reject the conclusion that lethal injection as applied in Florida is unconstitutional." 969 So.2d at 325. See also Griffin v. State, No. SC06-1055, 2008 WL 2415856 (Fla. Jun.2, 2008); Woodel v. State, 985 So.2d 524, 534 (Fla.2008); Lebron v. State, 982 So.2d 649, 666 (Fla.2008). In essence, we concluded in Lightbourne that no matter what test is utilized, Florida's procedure is constitutional.
Henyard presents the same argument previously denied by this Court in Lightbourne and Schwab. Henyard attempts to get around this by asserting the United States Supreme Court's decision in Baze sheds new light on this Court's decisions because the standard to review Eighth Amendment challenges was changed. A review of the Supreme Court's plurality opinion demonstrates otherwise.
In Baze, the Supreme Court addressed whether Kentucky's lethal injection protocol was unconstitutional under the Eighth Amendment. 128 S.Ct. at 1526. The Court affirmed the Kentucky Supreme Court's decision, holding that Kentucky's protocol did not constitute cruel and unusual punishment. Id. This holding is the only portion of the opinion upon which the majority of the Court agreed.[7] The standard *130 to be applied resulted in the splintered opinion of the Court.
The plurality opinion, in which Chief Justice Roberts and Justices Kennedy and Alito joined, concluded the appropriate standard was one of "substantial risk of harm." Id. at 1531. The plurality explicitly rejected the "unnecessary risk" standard Henyard suggests. Id. Justices Thomas and Scalia concurred in judgment, stating that a method of execution violates the Eighth Amendment "if it is deliberately designed to inflict pain." 128 S.Ct. at 1556 (Thomas, J. concurring in the judgment). Justices Breyer, Ginsburg, and Souter agreed that "the degree of risk, magnitude of pain, and availability of alternatives must be considered." 128 S. Ct at 1563 (Breyer, J., concurring in the judgment); 128 S. Ct at 1568 (Ginsburg, J., dissenting).
We have previously concluded in Lightbourne and Schwab that the Florida protocols do not violate any of the possible standards, and that holding cannot conflict with the narrow holding in Baze. Furthermore, we have specifically rejected the argument that Florida's current lethal injection protocol carries "a substantial, foreseeable, or unnecessary risk of pain." Lightbourne, 969 So.2d at 353. Accordingly, we reject Henyard's argument.

Section 945.10, Florida Statutes
Next, Henyard alleges section 945.10, Florida Statutes, which exempts the disclosure of the identity of an executioner from public records, is unconstitutional. We previously found section 945.10 facially constitutional and decline to recede from our decision now. See Bryan v. State, 753 So.2d 1244, 1250 (Fla.2000); see also Provenzano v. State, 761 So.2d 1097 (Fla. 2000). We also note Henyard's claim is procedurally barred for failure to raise it in prior proceedings.

Mental Health Claims
Henyard next seeks an extension of Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), to mental impairment that is not mental retardation. Henyard argues that his particular impairments have produced a disability that is identical to mental retardation in its disabling features. We find this claim procedurally barred and for the reasons stated below, we also find it does not constitute a valid newly discovered evidence claim.
Henyard asserts this claim is not procedurally barred because it is based on newly discovered evidence of research regarding emotional development. Henyard previously raised a similar claim using the same evidence.[8] Despite Henyard's assertions, we conclude this claim is procedurally barred. See Hill v. State, 921 So.2d 579, 584 (Fla.2006); Mills v. State, 684 So.2d 801, 804-05 (Fla.1996). We have rejected similar claims relating to an extension of Atkins. See, e.g., Diaz, 945 So.2d at 1151 (rejecting a claim that ABA Resolution 122A supports the proposition that personality disorders are akin to being *131 mentally retarded); Connor v. State, 979 So.2d 852, 867 (Fla.2007) (holding that mental conditions that are not insanity or mental retardation are not constitutional bars to execution (citing Diaz, 945 So.2d at 1151)). Although Henyard does not use the ABA report as newly discovered evidence, the information contained in the research he cites is similar, making his claim analogous to those rejected previously by this Court. See Morton v. State, Nos. SC06-2091 & SC07-1201, ___ So.2d ___, 2008 WL 3926851 (Fla. Aug.28, 2008) ("We have already rejected this claim ... as procedurally barred."). This Court also noted in Morton that emotional development research has been available for decades and therefore does not qualify as newly discovered evidence. Id.
Henyard additionally asserts that his mental condition at the time of the offense bars the death penalty under Atkins and Roper. The trial court summarily denied the claim, stating the claim was "virtually indistinguishable" from the second claim, and "[l]ike the new evaluation presented in Hill, ... this Court does not find that the self-serving evaluation based upon interviews with the defendant offers any truly new evidence." The trial court also noted that the claim was without merit. We agree.
As noted above, Henyard asserts his claim is not procedurally barred because of newly discovered evidence. The new evidence asserted is an evaluation conducted by psychologist Dr. Janice Stevenson. Ordinarily, a newly discovered evidence claim cannot be summarily denied for not being raised in a prior motion because, as this Court explained in Rutherford v. State, 940 So.2d 1112, 1120 (Fla. 2006), the Court should accept as true the defendant's allegations that he "could not have known about the evidence at the time of trial by the use of due diligence ... and that he could not have obtained the evidence earlier by the exercise of due diligence." However, in this case, Henyard did not allege that his "mental illness" could not have been discovered earlier. Even if he had made such an allegation, the record reveals that Henyard raised similar issues at trial and in his original postconviction motion as well as on appeal to this Court. At trial, the court considered Henyard's mental health as part of mitigation and gave it very little weight. During postconviction, the trial court rejected Henyard's request to extend Roper. We approved this rejection. 929 So.2d at 1052. Thus, this claim is now procedurally barred.[9]

Evidentiary Hearings
Finally, Henyard argues that we have established a "disturbing trend" of denying evidentiary hearings in successive motions when there is a signed death warrant in violation of the due process clause. This claim was not raised in Henyard's motion *132 to vacate and was not addressed by the trial court in its order. Accordingly, this claim is not properly raised for review by this Court. See Riechmann v. State, 966 So.2d 298, 307 (Fla.2007), petition for cert. filed, No. 07-11617 (U.S. Feb. 27, 2008); Kokal v. State, 901 So.2d 766, 779 (Fla. 2005); Owen v. Crosby, 854 So.2d 182, 187 (Fla.2003); Thompson v. State, 796 So.2d 511, 514 n. 5 (Fla.2001); Shere v. State, 742 So.2d 215, 219 n. 9 (Fla.1999); Doyle v. State, 526 So.2d 909, 911 (Fla.1988). In addition, even if not procedurally barred, this claim is without merit.
This Court has provided that "[c]laims in successive motions may be denied without an evidentiary hearing `[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief.'" White v. State, 964 So.2d 1278, 1284 (Fla.2007) (quoting Fla. R.Crim. P. 3.851(f)(5)(B)). Because a court's decision whether to grant an evidentiary hearing on a rule 3.851 motion is based on written materials before the court, its ruling is tantamount to a pure question of law, subject to de novo review. See State v. Coney, 845 So.2d 120, 137 (Fla.2003). The right to an evidentiary hearing is guided by Florida Rule of Criminal Procedure 3.851(f)(5)(b), which states, in relevant part, "[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief, the motion may be denied without an evidentiary hearing." Nothing in this rule has been interpreted by this Court to deny an evidentiary hearing to condemned prisoners once a death warrant has been signed by the Governor. See Tompkins v. State, 894 So.2d 857 (Fla.2005) (remanding with orders to allow Tompkins time to refile where he was denied review because of a procedural oversight while under an active death warrant). Indeed, we have carefully considered, and rejected, in this appeal, each of Henyard's claims to an entitlement to an evidentiary hearing.

Conclusion
For the reasons discussed above, we affirm the lower court's denial of Henyard's motion for postconviction relief and we also deny his petition for all writs jurisdiction.
It is so ordered.
QUINCE, C.J., WELLS, ANSTEAD, PARIENTE, LEWIS and CANADY, JJ., concur.
BELL, J., did not participate.
NO MOTION FOR REHEARING WILL BE ALLOWED.
NOTES
[1] The nine claims Henyard raised were:

(1) ineffective assistance of counsel during penalty phase because trial counsel failed to adequately investigate and prepare mitigating evidence and to adequately challenge the State's case; (2) trial counsel was ineffective for failing to interview the jurors about any changes in their penalty phase voting; (3) trial counsel was ineffective for failing to ask jurors various questions; (4) the jury instructions violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (5) the Florida death penalty statute is unconstitutional on its face and as applied; (6) electrocution is unconstitutional; (7) entitlement to relief because of "cumulative error;" (8) the death sentence rests on an unconstitutionally automatic aggravating circumstance; (9) the death sentence is unconstitutional because Henyard has the intellectual capacity of a thirteen-year-old child.
Henyard, 883 So.2d at 757 n. 5.
[2] We reject Henyard's assertion that there may have been a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because of the State's failure to disclose the Kennedy transcript. This claim was not raised below and is therefore not properly raised for review by this Court.
[3] We also considered whether Nawara's testimony would have been admissible at trial. Henyard alleges that the testimony would fall under the statement against interest exception to hearsay.

One of the exceptions to the hearsay rule is the declaration against interest. Baker v. State, 336 So.2d 364 (Fla. 1976). It has long been established that an out-of-court declaration may be admitted into evidence, even for the truth of the matter asserted, if two requirements are met. First, the out-of-court declarant must be unavailable to testify. Second, the out-of-court declaration must be contrary to the "interests" of the declarant.
Brinson v. State, 382 So.2d 322, 324 (Fla. 2d DCA 1979). Brinson has since been superseded by statute. Section 90.804(2)(c), Florida Statutes (1997), modified the ruling in Baker by requiring outside corroborating circumstances indicating the truthfulness of the statement. Brinson, 382 So.2d at 325 n. 1. A declarant is unavailable if the trial court sustains an assertion of a Fifth Amendment privilege. Id. (citing People v. Brown, 26 N.Y.2d 88, 308 N.Y.S.2d 825, 257 N.E.2d 16 (1970)). Here, Henyard does not allege the testimony is corroborated, nor does he allege that the testimony can be corroborated. See, e.g., Perry v. State, 675 So.2d 976 (Fla. 4th DCA 1996) (hearsay admissible when corroborating evidence that codefendant was the shooter established).
[4] Henyard additionally argues that the newly discovered evidence might have resulted in a less severe penalty because the jury vacillated in recommending the death penalty. However, unlike in the case relied upon by Henyard where the jury's recommendation was seven to five, Henyard's jury unanimously recommended the death penalty.
[5] In addition to his postconviction pleadings, Henyard filed a petition to invoke this Court's all writs jurisdiction on September 2, 2008. Because we address this claim as part of Henyard's appeal, we decline to exercise our all writs jurisdiction and deny the petition.
[6] Alternatively, Henyard argues that this Court's decision in State v. Kilgore, 976 So.2d 1066 (Fla.2007), petition for cert. filed, No. 07-11177 (U.S. May 28, 2008), requires a re-reading of section 27.702 to allow CCRC to file federal petitions under section 1983. However, this claim is also meritless. While Kilgore does appear to suggest a right to prosecute collateral attacks to a sentence of death, it explicitly precludes CCRC from acting as counsel in such cases. 976 So.2d at 1070 ("CCRC is not authorized to represent a death-sentenced individual in a collateral postconviction proceeding attacking the validity of a prior violent felony conviction that was used as an aggravator in support of a sentence of death."). Nowhere does Kilgore suggest a per se right to counsel as Henyard argues. Accordingly, we also reject this portion of Henyard's claim.
[7] See Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (stating that when the Court issues a decision where no rationale receives the vote of five justices, the holding of the Court is the "position taken by those members who concurred in the judgments on the narrowest of grounds.") (quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Courts have interpreted Marks differently to allow for either the narrowest holding in a particular case or the narrowest application of the standard applied to reach that holding, but it does not appear that any court would adopt Henyard's interpretation of Baze. Cf. United States v. Johnson, 467 F.3d 56, 60-65 (1st Cir.2006) (discussing the application of Marks by federal courts to the Supreme Court's plurality decision in Rapanos v. United States, 547 U.S. 715, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006)), cert. denied, ___ U.S. ___, 128 S.Ct. 375, 169 L.Ed.2d 260 (2007).
[8] Henyard previously raised a similar claim requesting this Court to extend the United States Supreme Court's ruling in Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). Henyard v. State, 929 So.2d 1052 (Fla.2006). The evidence he presents now to support the Atkins claim is the same as that raised to support his Roper claim.
[9] Dr. Stevenson's evaluation states that Henyard demonstrated and confirmed the presence of behaviors consistent with persons diagnosed with post-traumatic stress disorder and dependent personality disorder with dissociative features. She noted Henyard experienced a difficult childhood that included instances of sexual abuse and neglect. It appears these assessments are the same as those considered and rejected by the trial court during the penalty phase of Henyard's trial. See generally, State v. Henyard, No. 93-159-CF-A-MH (Fla. 5th Cir. August 19, 1994); Henyard, 689 So.2d at 244. The claim of sexual molestation reported by Dr. Stevenson was raised and rejected in the initial postconviction proceeding. Henyard, 883 So.2d at 761-63. Accordingly, even if this claim is not procedurally barred, Henyard fails to show this is newly discovered evidence that could not have been discovered by counsel previously. See generally Hill, 921 So.2d at 584.