2 So.3d 194 (2009)
Peter VENTURA, Appellant,
v.
STATE of Florida, Appellee.
No. SC08-60.
Supreme Court of Florida.
January 29, 2009.
*195 Bill Jennnings, Capital Collateral Regional Counsel, Mark S. Gruber and Maria Perinetti, Assistant CCR Counsel, Meddle Region, Tampa, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, and Barbara C. Davis, Assistant Attorney General, Daytona Beach, FL, for Appellee.
PER CURIAM.
This case is before the Court on appeal from an order summarily denying Peter Ventura's most recent successive postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.851. Through this motion, Ventura challenges the mode of his eventual execution (i.e., lethal injection).[1] Ventura has also filed a pro se all-writs petition seeking the removal of his appointed Capital Collateral Regional Counsel ("CCRC") attorney. We possess and exercise our jurisdiction to resolve these claims. See art. V, § 3(b)(1), (7), Fla. Const. As explained in our analysis, we reject each of Ventura's claims and affirm the circuit court's summary denial of his successive postconviction motion. We also deny his all-writs petition.

I. BACKGROUND
In 1988, Ventura was convicted of the first-degree, premeditated murder of Robert Clemente. Through our prior opinions addressing Ventura's direct and postconviction appeals, we have detailed the facts and procedural background surrounding this offense. See Ventura v. State, 560 So.2d 217, 217-18 (Fla.1990) ("Ventura I"), cert. denied, 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 334 (1990); Ventura v. State, 673 So.2d 479, 479-80 (Fla.1996) ("Ventura II"); Ventura v. State, 794 So.2d 553, 558 (Fla.2001) ("Ventura III"), cert. denied, 535 U.S. 1098, 122 S.Ct. 2296, *196 152 L.Ed.2d 1054 (2002). We have repeatedly affirmed Ventura's conviction and death sentence. Further, Ventura has experienced similar results in his related federal litigation. See Ventura v. Florida, 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 334 (1990) (No. 90-5607); Ventura v. Florida, 535 U.S. 1098, 122 S.Ct. 2296, 152 L.Ed.2d 1054 (2002) (No. 01-7125) (denying certiorari petitions); Ventura v. Moore, No. 602CV1159ORL19KRS, 2004 WL 3767535, at *34 (M.D.Fla.2004), aff'd 419 F.3d 1269, 1292 (11th Cir.2005) (denying federal habeas petition).
Most recently, on October 22, 2007, Ventura filed his current successive motion for postconviction relief, which he claims is based upon "newly discovered evidence." In this motion, Ventura: (1) assails the constitutionality of lethal injection as currently administered in Florida; (2) asserts that section 27.702, Florida Statutes (2007), as interpreted by this Court, is unconstitutional facially and as applied because it prohibits CCRC from filing mode-of-execution challenges under 42 U.S.C. § 1983 (2000); (3) claims that section 945.10, Florida Statutes (2007), as interpreted by this Court, is unconstitutional because it prohibits him from discovering the identities of his executioners, which he contends precludes him from determining the adequacy of their qualifications and training; and (4) the ABA's recent report, Evaluating Fairness and Accuracy in the State Death Penalty Systems: The Florida Death Penalty Assessment, published September 17, 2006, reveals that Florida's death-penalty system is seriously flawed and unconstitutional.[2]
As explained below, Ventura's motion is meritless. That aside, Ventura has also failed to comply with rule 3.851(e)(2)(C). See Hunter v. State, 33 Fla. L. Weekly S721, S722, S725, ___ So.3d ___, ___, 2008 WL 4348485 (Fla. Sept. 25, 2008) (holding that the defendant-appellant did not comply with rule 3.851(e)(2)(C)(iii) because he failed to attach copies of the documents upon which his postconviction claim relied). Ventura maintains that his "newly discovered evidence" is drawn from the following sources:
 Florida's 2006 lethal-injection protocol;
 Factual information surrounding the December 13, 2006, execution of Angel Diaz;
 The Report of the Governor's Commission on the Administration of Lethal Injection in Florida;
 The May 9, 2007, and August 1, 2007, lethal-injection protocols;
 The Department of Corrections' response to the report of the Governor's Commission; and
 The evidentiary-hearing testimony considered by the circuit court in Lightbourne v. State (which, as we noted, resulted in a record exceeding 6,500 pages, see Lightbourne v. McCollum, 969 So.2d 326, 330 (Fla.2007), cert. denied, ___ U.S. ___, 128 S.Ct. 2485, 171 L.Ed.2d 777 (2008)).
However, there is no indication in the record that Ventura ever provided the postconviction court with any of the documents upon which his claim supposedly rests (and he never proffered any witnesses). Cf. Hunter, 33 Fla. L. Weekly at S725, ___ So.3d at ___. Pursuant to binding Florida *197 precedent, the postconviction court summarily denied each of Ventura's claims.
Ventura now appeals this summary denial. We write solely to address Ventura's lethal-injection claim.[3] We do so to outline our understanding of the positions offered by the justices of the United States Supreme Court in Baze v. Rees, ___ U.S. ___, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), and to explain why the plurality decision presented in that case has not affected the validity of our decisions in Lightbourne v. McCollum, 969 So.2d 326 (Fla.2007), and Schwab v. State, 969 So.2d 318 (Fla.2007).

II. ANALYSIS

A. Standard of Review
Florida Rule of Criminal Procedure 3.851 governs the filing of postconviction motions in capital cases. Rule 3.851(d)(1) generally prohibits the filing of a postconviction motion more than one year after the judgment and sentence become final. An exception permits filing beyond this deadline if the movant alleges that "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence." Fla. R.Crim. P. 3.851(d)(2)(A). Here, Ventura alleges that he was unaware of the potentially unconstitutional nature of Florida's lethal-injection protocol until the "botched" execution of Angel Diaz on December 13, 2006.
Rule 3.851 also provides certain pleading requirements for initial and successive postconviction motions. For example, the motion must state the nature of the relief sought and must include "a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought." Fla. R.Crim. P. 3.851(e)(1)(C), (e)(1)(D), (e)(2)(A). As alluded to above, a successive motion based upon newly discovered evidence must also include:
(i) the names, addresses, and telephone numbers of all witnesses supporting the claim;
(ii) a statement that the witness will be available, should an evidentiary hearing be scheduled, to testify under oath to the facts alleged in the motion or affidavit;
(iii) if evidentiary support is in the form of documents, copies of all documents shall be attached, including any affidavits obtained; and
(iv) as to any witness or document listed in the motion or attachment to the motion, a statement of the reason why the witness or document was not previously available.
Fla. R.Crim. P. 3.851(e)(2)(C) (emphasis supplied).
Rule 3.851(f)(5)(B) permits the denial of a successive postconviction motion without an evidentiary hearing "[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief." A postconviction court's decision regarding whether to grant a rule 3.851 evidentiary hearing depends upon the written materials before the court; thus, for all practical purposes, its ruling is tantamount to a pure question of law and is subject to de novo review. See, e.g., Rose v. State, 985 So.2d 500, 505 (Fla.2008). In reviewing a trial court's summary denial of postconviction relief, we must accept the defendant's allegations as true to the extent that they *198 are not conclusively refuted by the record. See Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000). The Court will uphold the summary denial of a newly-discovered-evidence claim if the motion is legally insufficient or its allegations are conclusively refuted by the record. See McLin v. State, 827 So.2d 948, 954 (Fla.2002).
At the outset, Ventura failed to comply with rule 3.851(e)(2)(C) because he never attached any of the relevant lethal-injection documents to his successive postconviction motion and he did not proffer any witnesses to support his claims. For these reasons, Ventura's successive motion is legally insufficient. See Hunter, 33 Fla. L. Weekly at S722, S725, ___ So.3d at ___, ___ (holding that the defendant-appellant failed to comply with rule 3.851(e)(2)(C) because he did not attach relevant documents and did not proffer any expert witnesses to support his claim). However, even if Ventura had attached supporting documents and provided sufficient notice regarding expert witnesses, his lethal-injection claim would nonetheless remain meritless.

B. Ventura's Lethal-Injection Claim

i. Ventura has Merely Reiterated the Claims Presented by Lightbourne and Schwab
We have repeatedly and consistently rejected Eighth Amendment[4] challenges to Florida's current lethal-injection protocol. See Tompkins v. State, 994 So.2d 1072, 1080-82 (Fla.2008); Power v. State, 992 So.2d 218, 220-21 (Fla.2008); Sexton v. State, 997 So.2d 1073, 1089 (Fla. 2008); Schwab v. State, 995 So.2d 922, 924-33 (Fla.2008); Woodel v. State, 985 So.2d 524, 533-34 (Fla.2008), cert. denied, ___ U.S. ___, 129 S.Ct. 607, 172 L.Ed.2d 465 (2008); Lebron v. State, 982 So.2d 649, 666 (Fla.2008); Schwab v. State, 982 So.2d 1158, 1159-60 (Fla.2008); Lightbourne v. McCollum, 969 So.2d 326, 350-53 (Fla.2007). In his postconviction motion and brief to this Court, Ventura has simply re-alleged the criticisms of Florida's revised protocol that Lightbourne and his expert, Dr. Heath, presented in 2007. See Lightbourne, 969 So.2d at 347-49. Ventura has not presented any allegations beyond those of Lightbourne and Schwab (who predicated his claims upon those of Lightbourne).
This Court has thus previously rejected each of these challenges to Florida's lethal-injection protocol andbased upon the sound principle of stare decisiswe continue the same course here. See, e.g., Lightbourne, 969 So.2d at 349-53; Schwab, 969 So.2d at 321-25. As we stated in Schwab, "Given the record in Lightbourne and our extensive analysis in our opinion in Lightbourne v. McCollum, we reject the conclusion that lethal injection as applied in Florida is unconstitutional." Schwab, 969 So.2d at 325.

ii. Baze Does Not Require Reconsideration of Lightbourne and Related Decisions
The only "new" contention Ventura presents is that our recent lethal-injection decisions, including Lightbourne, have not applied the standard articulated by the Baze plurality. However, Ventura overlooks that we explicitly held in Lightbourne:
In light of the[] additional safeguards [present in the August 2007 lethal-injection protocol] and the amount of the *199 sodium pentothal used, which is a lethal dose in itself, we conclude that [the petitioner] has not shown a substantial, foreseeable or unnecessary risk of pain in the DOC's procedures for carrying out the death penalty through lethal injection that would violate the Eighth Amendment....
969 So.2d at 352-53 (footnote omitted) (emphasis supplied). Our analysis thus provided that Florida's current lethal-injection protocol is constitutional under either a substantial-risk, foreseeable-risk, or unnecessary-risk standard. This Court also recently observed in Tompkins that "we have rejected contentions that Baze set a different or higher standard for lethal injection claims than Lightbourne." 994 So.2d at 1081. We now take this occasion to explain why this is so.
The disjunctive phrasing of our holding in Lightbourne has proven prescient because the United States Supreme Court has not yet adopted a majority standard for determining the constitutionality of a mode of execution. See generally Baze v. Rees, ___ U.S. ___, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008). Specifically, the Baze plurality adopted a version of the substantial-risk standard,[5] while Justice Breyer, concurring in the judgment, and Justices Ginsburg and Souter, dissenting, adopted a version of the unnecessary-risk standard. See id. at 1525-38 (Roberts, C.J., joined by Kennedy and Alito, JJ.); id. at 1563-67 (Breyer, J., concurring in the judgment);[6]id. at 1567-72 (Ginsburg, J., dissenting, joined by Souter, J.). In contrast, Justices Thomas and Scalia renounced any risk-based standard in favor of a rule of law that would uphold any method of execution which does not involve the purposeful[7] infliction of "pain and suffering beyond that necessary to cause death." Id. at 1556-63 (Thomas, J., concurring in the judgment, joined by Scalia, J.). Justice Stevens did not provide a separate standard but, instead, expressed general disagreement with (1) the death penalty based upon his long experience with these cases and the purported erosion of the penalty's theoretical underpinnings (deterrence, incapacitation, and retribution), and (2) the allegedly unnecessary use of the paralytic drug *200 pancuronium bromide. See id. at 1542-52 (Stevens, J., concurring in the judgment).
Hence, the Baze Court did not provide a majority opinion or decision. In turn, this lack of consensus has complicated our duty to interpret article I, section 17 of the Florida Constitution "in conformity with the decisions of the United States Supreme Court"[8] concerning the Eighth Amendment's bar against "cruel and unusual punishments." Under normal circumstances, we would resort to the "narrowest grounds" analysis presented in Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), which provides that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, `the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" (quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion)). However, there are no reliable means of determining the "narrowest grounds" presented in Baze because three blocks of Justices provided three separate standards for determining the constitutionality of a mode of execution. We addressed this issue in Henyard v. State, 992 So.2d 120 (Fla.2008):
We have previously concluded in Lightbourne and Schwab that the Florida protocols do not violate any of the possible standards, and that holding cannot conflict with the narrow holding in Baze. Furthermore, we have specifically rejected the argument that Florida's current lethal injection protocol carries "a substantial, foreseeable, or unnecessary risk of pain." Lightbourne, 969 So.2d at 353. Accordingly, we reject [appellant's] argument [that we should reconsider Lightbourne and Schwab in light of Baze].
Id. at 130 (emphasis supplied). Consequently, Florida's current lethal-injection protocol passes muster under any of the risk-based standards considered by the Baze Court (and would also easily satisfy the intent-based standard advocated by Justices Thomas and Scalia).
We also recently upheld and adopted a trial court's analysis concluding that Florida's lethal-injection protocol is "substantially similar" to that of Kentucky. See Schwab, 995 So.2d at 924-33. This holding brings Florida's lethal-injection protocol squarely within the safe harbor created by the Baze plurality. Baze, 128 S.Ct. at 1537 (Roberts, C.J., joined by Kennedy and Alito, JJ.) ("A State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard." (emphasis supplied)); see also Baze, 128 S.Ct. at 1569-71 (Ginsburg, J., dissenting, joined by Souter, J.) (favorably contrasting Florida's consciousness assessment with that of Kentucky and strongly indicating that even the Baze dissenters would have approved Florida's current lethal-injection protocol under an Eighth Amendment analysis).
In its current form, Florida's lethal-injection protocol ensures unconsciousness through a pause between the injection of a lethal dose of sodium pentothal (a potent coma-inducing barbiturate) and the injection of the second and third drugs, during which time the warden engages in a thorough consciousness assessment (brushing the condemned's eye lashes, calling the condemned's name, and shaking the condemned). Further, we have held that the condemned inmate's lack of consciousness is the focus of the constitutional inquiry. *201 See generally Lightbourne, 969 So.2d 326 (repeatedly stressing the significance of the undisputed fact that a sufficient dose of sodium pentothal renders the condemned unconscious and that this lack of consciousness precludes the perception of any pain associated with the later injection of pancuronium bromide and potassium chloride).
Accordingly, in light of Ventura's failure to comply with rule 3.851(e)(2)(C) and the meritless nature of his lethal-injection claim, we affirm the circuit court's summary denial of his most recent successive postconviction motion.

C. Ventura's All-Writs Petition
Following Ventura's appeal from the summary denial of his most recent postconviction motion, he filed a pro se petition seeking to invoke our all-writs jurisdiction under article V, section 3(b)(7) of the Florida Constitution.[9] Through this petition, Ventura requests that we:
(1) Conduct a hearing under section 27.711(12), Florida Statutes (2007), to determine whether his appointed CCRC attorney incompetently and untimely filed his reply brief in the underlying postconviction appeal;
(2) Grant him the opportunity to file a new rule 3.851 postconviction motion with the relevant circuit court; and
(3) Appoint new postconviction counsel to represent him during this successive postconviction litigation.
We deny this petition as meritless.
Ventura invokes our supervisory authority under section 27.711(12) to monitor whether postconviction counsel is providing "quality representation." As previously stated, Ventura contends that his CCRC attorney untimely filed his reply brief in this case. However, Ventura is mistaken because appointed counsel timely served and filed the reply brief during August 2008.
On February 29, 2008, we entered a briefing order requiring that Ventura serve his reply brief upon the State within forty days following service of the State's answer brief. After an intervening motion for extension of time (which we granted), and the filing of Ventura's initial brief, the State served its answer brief by U.S. mail upon Ventura's CCRC attorney on June 18, 2008. Florida Rule of Appellate Procedure 9.420(e)  "Additional Time After Service by Mail"  provides as follows:
If a party, court reporter, or clerk is required or permitted to do an act within some prescribed time after service of a document, and the document is served by mail, 5 days shall be added to the prescribed period.
(Emphasis supplied.) Consequently, because (1) the time period for service of *202 Ventura's reply brief was dependent upon service of the State's answer brief, and (2) the State served its brief by mail, Ventura had forty-five days following June 18, 2008,[10] in which to serve his reply brief. Forty-five days from Wednesday, June 18, 2008, was Saturday, August 2, 2008. However, pursuant to rule 9.420(f) a Saturday, Sunday, or enumerated legal holiday may not serve as the final day of the applicable time period. Instead, "the period shall run until the end of the next day that is neither a Saturday, Sunday, nor holiday," which, in this case, was Monday, August 4, 2008. Ventura's CCRC attorney served the reply brief upon the State by U.S. mail on August 1, 2008, and the clerk's office stamped the reply brief as filed on August 4, 2008.
Therefore, Ventura's allegations that his CCRC attorney untimely filed the reply brief are unfounded, and we deny his all-writs petition.[11]

III. CONCLUSION
For the reasons expressed in our analysis, we deny Ventura's successive postconviction motion and all-writs petition. We further reiterate that nothing contained within the various opinions of Baze v. Rees, ___ U.S. ___, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), affects the validity of our decisions upholding Florida's current lethal-injection protocol.
It is so ordered.
QUINCE, C.J., and WELLS, PARIENTE, LEWIS, and POLSTON, JJ., concur.
CANADY, J., specially concurs with an opinion.
ANSTEAD, Senior Justice, specially concurs with an opinion, in which PARIENTE and LEWIS, JJ., concur.
CANADY, J., specially concurring.
I concur fully in the Court's opinion with respect to Ventura's postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.851. I would dismiss Ventura's all-writs petition for failure to state a basis for relief.
ANSTEAD, Senior Justice, specially concurring.
I agree with the majority that our precedent mandates an affirmance on all issues. However, I also agree with appellant that recent decisions from the Eleventh Circuit demonstrate an error inherent in this Court's repeated statements that death-sentenced inmates cannot be prejudiced by the lack of state-funded representation in section 1983 proceedings challenging Florida's execution protocol, because they may, in lieu of filing a section 1983 action, have appointed counsel file a successive federal habeas petition to challenge the protocol.
Under prevailing Eleventh Circuit law, filing a successive federal habeas petition is no longer an option for any defendant who has previously filed an initial federal habeas petition before Florida's current execution protocol was adopted. The Eleventh Circuit, in its decision in In re Schwab, 506 F.3d 1369 (11th Cir.2007), and other decisions, has consistently indicated it will simply deny such a habeas petition *203 as successive without addressing the merits. In fact, if an inmate has previously filed any federal habeas petition before Florida adopted its August 2007 protocol for execution, he will be barred from filing a successive federal habeas petition challenging Florida's current lethal injection protocol "because [such a claim] neither relies on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, nor involves facts relating to guilt or innocence." In re Schwab, 506 F.3d at 1370 (citations omitted). Therefore, contrary to the rationale of our prior decisions, federal habeas review is no longer an available alternative to a section 1983 claim challenging Florida's current lethal-injection protocol.
On the other hand, the United States Supreme Court has ruled that defendants may utilize a section 1983 action to avoid the procedural bar applied in In re Schwab, and utilize such an action to challenge a state's current execution protocol. Consequently, for the majority of Florida's death-sentenced inmates to have any meaningful opportunity for federal review of the current lethal-injection protocol, they must file a section 1983 action. We should acknowledge this current law, and recede from that portion of our holdings in State ex rel. Butterworth v. Kenny, 714 So.2d 404 (Fla.1998), and subsequent decisions that rely on the existence of state-funded habeas proceedings as a basis for justifying the denial of state-funded counsel in section 1983 proceedings. See, e.g., Diaz v. State, 945 So.2d 1136, 1154 (Fla. 2006) ("Diaz did have an alternative avenue for challenging the lethal injection procedure in federal court [a federal habeas petition], but did not utilize it.").
PARIENTE and LEWIS, JJ., concur.
NOTES
[1] As of January 2009, the Governor has not signed a death warrant for Ventura.
[2] On appeal, Ventura abandoned his fourth claim based on recent decisions from this Court holding that the ABA report is not newly discovered evidence and that, even if it were, the report does not reveal that Florida's death-penalty system is unconstitutional. See, e.g., Tompkins v. State, 994 So.2d 1072, 1082-83 (Fla.2008) (citing Power v. State, 992 So.2d 218, 222-23 (Fla.2008)); Rolling v. State, 944 So.2d 176, 181 (Fla.2006) (citing Rutherford v. State, 940 So.2d 1112, 1117, 1118 (Fla.2006)).
[3] This Court has already addressed and rejected similar claims with regard to sections 27.702 and 945.10, Florida Statutes (2007). See, e.g., Henyard v. State, 992 So.2d 120, 128-29, 130 (Fla.2008), cert. denied, ___ U.S. ___, 129 S.Ct. 28, 171 L.Ed.2d 930 (2008). We decline to recede from our prior precedent.
[4] The prohibition against "cruel or unusual punishment" present in the Florida Constitution "shall be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution." Art. I, § 17, Fla. Const.
[5] In relevant part, the plurality stated:

[A]n inmate cannot succeed on an Eighth Amendment claim simply by showing one more step the State could take as a failsafe for other, independently adequate measures. This approach would serve no meaningful purpose and would frustrate the State's legitimate interest in carrying out a sentence of death in a timely manner....
... A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and available alternatives. A State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard ....
... State efforts to implement capital punishment must certainly comply with the Eighth Amendment, but what that Amendment prohibits is wanton exposure to "objectively intolerable risk," Farmer[ v. Brennan], 511 U.S. [825, 846,] and n. 9[, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)], not simply the possibility of pain.
Baze, 128 S.Ct. at 1537 (Roberts, C.J., joined by Kennedy and Alito, JJ.) (emphasis supplied).
[6] Justice Breyer prefaced his concurrence in the judgment by stating: "In respect to how a court should review such a claim, I agree with Justice Ginsburg. She highlights the relevant question, whether the method creates an untoward, readily avoidable risk of inflicting severe and unnecessary suffering." Baze, 128 S.Ct. at 1563 (Breyer, J., concurring in the judgment) (citing Justice Ginsburg's dissent at 1572) (some emphasis supplied).
[7] See Black's Law Dictionary 1272 (8th ed.2004) ("purposeful, adj. Done with a specific purpose in mind; DELIBERATE.").
[8] Art. I, § 17, Fla. Const. (emphasis supplied).
[9] Any exercise of jurisdiction with regard to Ventura's pro se all-writs petition would necessarily aid this tribunal in the "complete exercise of its jurisdiction" concerning this capital case. Art. V, § 3(b)(7), Fla. Const.; see also art. V, § 3(b)(1), Fla. Const.; Williams v. State, 913 So.2d 541, 543 (Fla. 2005) ("[T]he all writs provision [of article V, section 3(b)(7)] does not constitute a separate source of original or appellate jurisdiction. Rather, it operates in furtherance of the Court's `ultimate jurisdiction,' conferred elsewhere in the [C]onstitution." (emphasis supplied)); State v. Fourth Dist. Court of Appeal, 697 So.2d 70, 71 (Fla.1997) ("[W]e now hold that in addition to our appellate jurisdiction over sentences of death, we have exclusive jurisdiction to review all types of collateral proceedings in death penalty cases." (emphasis supplied)); Coleman v. State, 930 So.2d 580, 580-81 (Fla.2006) (considering allegations with regard to the performance of assigned postconviction counsel under section 27.711(12), Florida Statutes (2005), and remanding to the circuit court with instructions for the assigned attorney to respond to these allegations).
[10] "In computing any period of time prescribed or allowed by these rules, by order of the court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included." Fla. R.App. P. 9.420(f) (emphasis supplied).
[11] As part of his petition, Ventura also briefly alleges that at some undisclosed time, CCRC untimely filed a "federal petition for certiorari." Ventura does not further elaborate, and there is no evidence supporting this allegation.