PER CURIAM.
 

 Mark Allen Davis, a prisoner under sentence of death, seeks review of an order of the circuit court summarily denying his successive motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.851. Under our mandatory jurisdiction to review this final order, we affirm because the newly discovered evidence would not probably produce an acquittal on retrial or result in different sentences, and the claims under
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),
 
 Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), are facially insufficient.
 
 See
 
 art. V, § 3(b)(1), Fla. Const.
 

 BACKGROUND
 

 In 1987, Davis was convicted of premeditated first-degree murder, armed robbery, and grand theft in connection with the death of Orville Landis, which resulted in a sentence of death.
 
 See Davis v. State,
 
 586 So.2d 1038, 1040 (Fla.1991)
 
 (Davis I), vacated,
 
 505 U.S. 1216, 1216, 112 S.Ct. 3021, 120 L.Ed.2d 893 (1992).
 
 [1]
 
 We affirmed the convictions and sentences on direct appeal.
 
 See Davis I,
 
 586 So.2d at 1042. Davis then petitioned the United States Supreme Court for review and was granted relief.
 
 See Davis v. Florida,
 
 505 U.S. 1216, 112 S.Ct. 3021, 120 L.Ed.2d 893 (1992). The High Court vacated the judgment and re
 
 *525
 
 manded to this Court for further' consideration.
 
 See id.
 
 On remand, this Court reaffirmed the death sentence.
 
 See Davis v. State,
 
 620 So.2d 152 (Fla.1993)
 
 (Davis ID, cert. denied,
 
 510 U.S. 1170, 114 S.Ct. 1205, 127 L.Ed.2d 552 (1994).
 

 Next, Davis filed an initial motion for postconviction relief which the trial court denied. Davis sought review of that order in this Court and also filed his petition for writ of habeas corpus. We affirmed the order of the postconviction trial court and denied the petition.
 
 See Davis v. State,
 
 928 So.2d 1089, 1137 (Fla.2005)
 
 (Davis III).
 
 Thereafter, Davis filed a second petition for writ of habeas corpus in this Court, which was also denied.
 
 See Davis v. McDonough,
 
 933 So.2d 1153 (table).
 

 In 2008, Davis filed a successive motion for postconviction relief which alleged that newly discovered evidence revealed that witnesses Kimberly Rieck Kearney and Beverly Castle recanted mischaracteriza-tions in their trial testimony. This allegation was based on an unsworn declaration of Kearney and a sworn affidavit of Castle in which each witness expressed that Davis was more intoxicated than they had originally testified during his trial. In addition, Castle recanted her original trial testimony that Davis informed her that he intended to “do away with” the victim which she had explained during the trial as a plan by Davis to murder the victim. Kearney’s new declaration also included a statement that she testified at trial pursuant to a threat from an unidentified individual that her boyfriend would remain in jail if she failed to appear.
 

 Davis asserted that these recantations constituted newly discovered evidence which also established both
 
 Brady
 
 and
 
 Giglio
 
 violations and demonstrated ineffective assistance of counsel. In addition, Davis challenged the constitutionality of lethal injection based on newly discovered evidence. Following a
 
 Huff
 

 [2]
 

 hearing, the postconviction trial court entered an order summarily denying Davis’s motion. The court below determined that the motion was insufficiently pled and that the affidavit and declaration did not constitute newly discovered evidence. Further, the post-conviction trial court was of the view that there had been a lack of due diligence and that the motion failed to demonstrate that Davis was entitled to relief. Davis submitted a motion for rehearing in which he corrected the pleading deficiencies noted by the postconviction trial court, but this motion was also denied. Davis now seeks review of the order summarily denying his successive motion.
 
 [3]
 

 
 *526
 
 ANALYSIS
 

 Standard of Review
 

 We begin our analysis of these issues by discussing the standard applicable to all. The decision of whether to grant an evidentiary hearing on a rule 3.851 motion is ultimately based on the written materials before the court, and the ruling of the postconviction trial court on that issue is tantamount to a pure question of law subject to de novo review.
 
 See State v. Coney,
 
 845 So.2d 120, 137 (Fla.2003). Accordingly, when reviewing a postconviction trial court’s summary denial of a successive rule 3.851 motion we will accept the factual allegations of the mov-ant as true to the extent that they are not refuted by the record and affirm the ruling if the motion, files, and record conclusively demonstrate that the movant is entitled to no relief.
 
 See generally
 
 Fla. R.Crim. P. 3.851(f)(5)(B). Further, this Court is guided by the principle that courts are encouraged to liberally view the allegations to allow evidentiary hearings on timely raised claims that commonly í-equire a hearing.
 
 See generally Amendments to Fla. Rules of Crim. Pro. 3.851,
 
 797 So.2d 1213, 1219-20 (Fla.2001).
 

 A defendant must meet two requirements to obtain a new trial based on newly discovered evidence. First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must also appear that neither the defendant nor defense counsel could have known of such evidence by the use of diligence. Second, the newly discovered evidence must be of a nature that it would probably produce an acquittal on retrial or yield a less severe sentence.
 
 See Jones v. State,
 
 709 So.2d 512, 521 (Fla.1998)
 
 (Jones
 
 II);
 
 Jones v. State,
 
 591 So.2d 911, 915 (Fla.1991)
 
 (Jones I).
 
 Newly discovered evidence satisfies the second prong of the
 
 Jones II
 
 test if it “weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability.”
 
 Jones II,
 
 709 So.2d at 526 (quoting
 
 Jones v. State,
 
 678 So.2d 309, 315 (Fla.1996)). In applying this two-prong test, the postconviction trial court must “consider all newly discovered evidence which would be admissible,” and must “evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial.”
 
 Jones I,
 
 591 So.2d at 916. This determination necessarily includes consideration of
 

 whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether this evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.
 

 Jones II,
 
 709 So.2d at 521 (citations omitted).
 

 Specifically, recanted testimony that is alleged to constitute newly discovered evidence will mandate a new trial only if (1) the court is satisfied that the recantation is true, and (2) the recanted testimony would probably render a different outcome in the proceeding.
 
 See Armstrong v. State,
 
 642 So.2d 730, 735 (Fla.1994). The determination of whether the statements are true and meet the due diligence and probability prongs of
 
 Jones II
 
 usually requires an evidentiary hearing to evaluate credibility unless the affidavit is inherently incredible or obviously immaterial to the verdict and sentence.
 
 See Stephens v. State,
 
 829 So.2d 945 (Fla. 1st DCA 2002) (citing
 
 Robinson v. State,
 
 736 So.2d 93, 93 (Fla. 4th DCA 1999);
 
 Venuto v. State,
 
 615 So.2d 255, 256 (Fla. 3d DCA 1993)).
 

 
 *527
 
 Facial Insufficiency
 

 The postconviction trial court denied the request for an evidentiary hearing for several reasons, the first being that the motion was facially insufficient because it failed to include some of the technical requirements of rule 3.851(e)(2)(C). Items such as the phone numbers of the witnesses supporting the claim and a boilerplate statement that the witnesses would be available to testify at an evidentiary hearing were not in the initial motion. The postconviction trial court’s denial of relief on this basis was in error because a motion based on newly discovered substantive evidence should not be denied as facially insufficient based simply on easily curable, technical deficiencies in the pleadings without allowing the defendant any opportunity to correct and provide the technical matters. When a postconviction motion fails to comply with the pleading requirements of the rule and the court intends to deny the motion based on these easily curable technical omissions, the proper procedure is for the court to strike the motion with leave to amend within a reasonable period if the technically defective pleadings can be completed and amended in good faith.
 
 See Spera v. State,
 
 971 So.2d 754, 761 (Fla.2007) (extending the holding of
 
 Bryant v. State,
 
 901 So.2d 810 (Fla.2005), to all initial postconviction motions). The
 
 Bryant
 
 Court stated that this procedure is necessary because:
 

 While defendants should not be given an unlimited opportunity to amend,
 
 due process demands that some reasonable opportunity be given
 
 to defendants who make good faith efforts to file their claims in a timely manner and whose
 
 failure to comply with the ride is more a matter of form, than substance.
 

 Id.
 
 at 819 (emphasis supplied). There is an important distinction between form and substance with regard to matters in this type of case.
 

 Here, the technical omissions were easily curable and clearly a matter of form over substance which could be included in an amended motion. This was not a shell motion providing a skeletal claim for relief that was filed merely to comply with the timing deadlines in anticipation of later amending with a substantive motion. Davis substantially complied with the rule by including the names and addresses of the recanting witnesses and by attaching the attendant declaration and affidavit which contained the substance of their recanted testimony. Consequently, this case is entirely distinguishable from
 
 Ventura v. State, 2
 
 So.3d 194 (Fla.2009), where the defendant failed to provide
 
 any
 
 of the documents upon which his claim rested and
 
 “never proffered any witnesses.” 2
 
 So.3d at 196 (emphasis supplied).
 

 Furthermore, when confronted about the technical omissions Davis attempted to cure any deficiencies through an oral presentation of information during the
 
 Huff
 
 hearing and also in his motion for rehearing which included the witnesses’ respective phone numbers, addresses, and relevancy to the issues presented. Davis offered to submit a written response to amend the asserted pleading deficiencies and the postconviction trial court never indicated that an amended motion was necessary to avoid denial of the motion based on the pleadings. Under these circumstances, the postconviction trial court erroneously concluded that the motion was facially insufficient without providing Davis an opportunity to cure these deficiencies through an amended motion. However, this error does not entitle Davis to relief because even a facially sufficient motion based on the recanted testimony presented would neither probably produce
 
 *528
 
 an acquittal on retrial nor probably yield a less severe sentence.
 

 Newly Discovered Evidence
 

 On the substantive issue, the postconviction trial court below summarily denied the motion because the affidavits did not constitute newly discovered evidence because there had been a lack of due diligence. The postconviction trial court ruled that Davis failed to allege specific details with regard to previous efforts undertaken to locate and interview the witnesses and had also failed to provide an explanation as to why the witnesses would be difficult to locate when they resided in Davis’s home town. In addition, the post-conviction trial court concluded that the recanted testimony did not constitute evidence that would probably produce an acquittal on retrial or mitigate the sentence. To support this conclusion, the court below relied on the confession of Davis and the fact that the trial testimony of Kearney and Castle was consistent with their statements on the day that the victim was found.
 

 Due Diligence
 

 The postconviction trial court’s first and primary substantive pleading basis for denying relief was that Davis failed to properly plead due diligence. This was in error. Under the first prong of
 
 Jones II,
 
 the statements made during the
 
 Huff
 
 hearing in conjunction with the assertions in the motion established a prima facie case of diligence sufficient to require an evidentiary hearing. Specifically, counsel informed the postconviction trial court during the hearing that investigators conducted computer searches to locate the witnesses and traveled to Illinois in an attempt to find them. However, upon traveling to Illinois the investigators were unable to contact the witnesses. At the pleading stage, this information was sufficient to establish due diligence.
 
 See Swaf-ford v. State,
 
 679 So.2d 736, 739 (Fla.1996) (concluding that at the pleading stage, counsel’s claim that an affidavit amounted to newly discovered evidence combined with a statement that counsel was unable to locate a witness because no address was available was sufficient for the purpose of demonstrating that an evidentiary hearing was required).
 

 Here, as in
 
 Swafford,
 
 the State’s only argument to dispute due diligence was that defense counsel had “years” to find the witness.
 
 See id.
 
 Regardless of the time span from the time of trial to the discovery of the new testimony, recanted testimony cannot be “discovered” until the witness
 
 chooses
 
 to recant.
 
 See Burns v. State, 858
 
 So.2d 1229, 1230 (Fla. 1st DCA 2003) (“Even though the appellant knew at trial that the codefendant was lying, the appellant could not have gotten the code-fendant to admit that he was lying earlier, and thus the recantation is newly discovered evidence that could not have been obtained earlier with due diligence.”). Logically, even if counsel had or could have located these witnesses at an earlier date such earlier date does not conclusively establish that the witnesses would have recanted their testimony at that earlier time.
 

 The postconviction trial court appears to have incorrectly applied the heightened requirements to establish due diligence during an evidentiary hearing to evaluate the allegations at a pleading stage. However, permitting a newly discovered evidence claim to proceed to an evidentiary hearing does
 
 not
 
 establish that the recanted testimony qualifies as newly discovered evidence as a matter of law.
 
 See Siuafford,
 
 679 So.2d at 739. The newly discovered evidence claim remains to be factually tested in an evidentiary hearing to determine whether the defendant has demonstrated that the successive motion has been filed within the time limit for
 
 *529
 
 when the statement was or could have been discovered through the exercise of due diligence.
 
 See id.
 
 The motion here was sufficiently pled to allow the opportunity to prove through the testimony of witnesses that the threshold requirement of due diligence was satisfied. Accordingly, the postconviction trial court erred in summarily denying this claim on the basis that the pleading failed to sufficiently satisfy the due diligence requirement at that stage of the proceeding.
 

 Probability of Altering the Outcome
 

 A newly discovered evidence claim must satisfy both prongs of
 
 Jones II
 
 which requires that we address whether the recanted testimony demonstrates a probability of altering the verdict and sentences. With regard to this aspect of the
 
 Jones II
 
 analysis, the postconviction trial court correctly concluded that the recanted testimony with regard to intoxication does not produce a probability that the verdict or sentence would change based on this Court’s prior precedent and the evidence presented during the original trial. The recanted testimony which merely states that Castle and Kearney now believe Davis was intoxicated on the day of the murder would not alter the outcome of the trial because it is cumulative to the evidence already presented to the jury.
 
 See Davis III,
 
 928 So.2d at 1112 (concluding that trial counsel effectively presented evidence of Davis’s intoxication through the cross-examination of Kearney and Castle). Therefore, the postconviction trial court correctly evaluated the negligible impact of this evidence.
 

 Notwithstanding the correct result with regard to the intoxication issue, the postconviction trial court failed to consider and address the more troubling aspect of the recanted testimony. Nothing in the record refutes Castle’s statement that Davis
 
 never
 
 said he planned “to do away with” the victim. Castle testified to the contrary during the original trial that Davis said he planned to “do away with” the victim. This statement was a significant piece of evidence directed to prove Davis’s premeditation during the guilt phase and to support the imposition of an aggravating circumstance in the penalty phase. To support the finding that the murder was cold, calculated, and premeditated (“CCP”), the original trial court relied, in part, on Castle’s testimony that Davis stated earlier in the day that he was going to “rip the [victim] off and do away with him.” In the direct appeal this Court approved the determination that Castle’s statement, coupled with the testimony of the medical examiner, was sufficient evidence to support CCP.
 
 See Davis I,
 
 586 So.2d at 1040. Furthermore, during the evidentiary hearing on the initial postcon-viction motion, trial counsel testified that the statements of Castle and Kearney were a hindrance to the defense strategy because they established either premeditated or felony murder. Castle’s recantation of the statement that was utilized to indicate Davis’s intent to kill the victim is generally the type of testimony that would require an evidentiary hearing. This type of evidence under these circumstances impacts both the premeditation element established in the guilt phase and the elements necessary for CCP to be proven in the penalty phase. Thus, the court below erred in summarily denying this claim without allowing Davis an opportunity to present evidence in support of it during an evidentiary hearing.
 

 However, our ultimate analysis is that this claim was properly denied on the alternative basis that the recantation would not eliminate the other evidence supporting premeditation to commit the murder and the proportionality of the
 
 *530
 
 death sentence. Even if we assume an evidentiary hearing had been conducted and Davis provided sufficient evidence to strike the CCP aggravating factor, the recantation would not eliminate Davis’s confession and the additional, nonrecanted testimony that he said he planned to “rip [the victim] off.” First, the witnesses’ new interpretation of these statements does not probably change the ability of the jury to interpret the statements during the guilt phase to mean that Davis intended to rob the victim. If the jury interpreted these statements to mean Davis planned to rob the victim, the capital conviction would be supported under the theory of felony murder.
 

 Next, Davis confessed that he stabbed the victim, allegedly in self-defense, but when the first knife used in the murder fractured, Davis retrieved a second knife to finish the deed. Multiple stab wounds deliberately aimed at vital organs support a finding of premeditation for first-degree murder.
 
 See Perry v. State,
 
 801 So.2d 78, 85-86 (Fla.2001) (citing
 
 Jimenez v. State,
 
 703 So.2d 437, 440 (Fla.1997)). In addition, “[premeditation may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act.”
 
 Boyd v. State,
 
 910 So.2d 167, 181 (Fla.2005) (internal quotation nrarks omitted). When the knife broke Davis made the conscious decision to obtain the second knife to complete the murder. The medical examiner testified that
 

 the victim sustained
 
 multiple stab wounds
 
 to the
 
 back, chest, and neck;
 
 multiple blows to the face; was choked or hit with sufficient force to
 
 break his hyoid bone;
 
 was intoxicated to a degree that impaired his ability to defend himself; and was alive and conscious when each injury was inflicted. The evidence showed that the slashes to the victim’s throat were made with a small-bladed knife, which was broken during the attack, and the wounds to the chest and back were made with a large butcher knife, found at the crime scene.
 

 Davis I,
 
 586 So.2d at 1040. Thus, Davis’s confession that he stabbed the victim with two different knives, coupled with the testimony of the medical examiner that the victim sustained stab wounds to the back, chest, and neck, supports a finding of premeditated first-degree murder.
 

 As to the proportionality of the death sentence, the original trial court found multiple aggravating circumstances in support of the penalty other than CCP. These included the findings that (1) the murder was heinous, atrocious, or cruel (“HAC”); (2) that the murder was committed while Davis was under a sentence of imprisonment; and (3) the collective aggravating circumstance that the murder was committed for pecuniary gain, that Davis had previously been convicted of another capital offense or felony involving the use of or threat of violence to some person, and that the murder was committed while Davis was engaged in the commission of a robbery. The recanted testimony would not affect the imposition of these aggravating circumstances which were based on other evidence.
 

 This Court has determined that the death penalty was a proportionate sentence in cases that involved
 
 only
 
 the HAC aggravating circumstance.
 
 See, e.g., Butler v. State,
 
 842 So.2d 817, 833 (Fla.2003);
 
 Blackwood v. State, 777
 
 So.2d 399, 412-13 (Fla.2000);
 
 Cardona v. State,
 
 641 So.2d 361, 365-66 (Fla.1994). Further, the original trial court did not find any mitigating circumstances to be considered and weighed against the multiple aggravators. Thus, even if the recantation were accepted and the CCP aggravating factor elimi
 
 *531
 
 nated, this Court would still find that the death penalty is a proportionate penalty in this case.
 

 The newly discovered evidence claim provides Davis with no relief from his judgments and sentences because the recantation does not refute the additional evidence presented at trial to demonstrate premeditation, felony murder, and the proportionality of the death sentence. Even if we assume that the recantation would eliminate Castle’s original testimony as support for premeditation and CCP, the newly discovered evidence still would
 
 not
 
 undermine the evidence against Davis such that it would give rise to a reasonable doubt as to his culpability and also would not demonstrate that admitting it would probably yield a less severe sentence.
 
 See Jones II,
 
 709 So.2d at 526 (quoting
 
 Jones v. State,
 
 678 So.2d 309, 315 (Fla.1996));
 
 Jones I,
 
 591 So.2d at 915. Accordingly, the motion was properly denied because the record conclusively demonstrates that Davis is not entitled to relief.
 

 Brady
 

 Davis also alleges that the newly discovered evidence established a violation of
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We affirm the postconviction trial court’s summary denial of this claim because the motion does not demonstrate a prima facie case that the State willfully or inadvertently suppressed material evidence within its possession or control that was favorable to the defense. To establish a
 
 Brady
 
 violation, the defendant has the burden to show that (1) either exculpatory or impeaching evidence, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced.
 
 See Strickler v. Greene,
 
 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999);
 
 Way v. State,
 
 760 So.2d 903, 910 (Fla.2000). To meet the materiality prong, the defendant must demonstrate a reasonable probability that had the suppressed evidence been disclosed the jury would have reached a different verdict or recommended a life sentence.
 
 See Strickler,
 
 527 U.S. at 289, 119 S.Ct. 1936. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 
 See Strickler,
 
 527 U.S. at 290, 119 S.Ct. 1936;
 
 Way,
 
 760 So.2d at 913. The remedy of a new trial for a
 
 Brady
 
 violation is only available when “the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict [and sentence].”
 
 Strickler, 527
 
 U.S. at 290, 119 S.Ct. 1936 (quoting
 
 Kyles v. Whitley,
 
 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). Giving deference to the trial court on questions of fact, this Court reviews de novo the application of the law and independently reviews the cumulative effect of the alleged suppressed evidence.
 
 See Mordenti v. State,
 
 894 So.2d 161, 169 (Fla.2004);
 
 Way,
 
 760 So.2d at 913.
 

 Davis has not satisfied his burden to demonstrate that the State willfully or inadvertently suppressed favorable, material evidence. The conclusory allegations in the pleading fail to specifically set forth that the State had
 
 any
 
 knowledge of the substance or motives behind Kearney’s testimony. Given that the alleged recantation is newly discovered, there is no basis to claim that the State withheld this information from Davis.
 

 Even if the newly discovered evidence is considered as impeaching information that should be considered in conjunction with the evidence presented during trial, the testimony still does not satisfy the materiality prong. This Court has already held that Davis could not establish prejudice with regard to the State allegedly suppressing state
 
 *532
 
 ments from several witnesses concerning Davis’s level of intoxication.
 
 See Davis III,
 
 928 So.2d at 1115.
 

 We agree with trial counsel that he accomplished his goal of placing evidence of intoxication before the jury during his detailed cross-examination of the State’s witnesses. Additionally, trial counsel stated that once he had placed this evidence before the jury, he had no desire to call any other witnesses with information regarding Davis’s intoxication because he did not want to relinquish the ability to present the first and last closing arguments. Given this strategy, we conclude that even if the statements to which Davis refers were not disclosed to his defense team, these witnesses would not have been presented to the jury. Therefore, our confidence in the outcome of the proceeding is not undermined.
 

 Davis III,
 
 928 So.2d at 1115 (emphasis supplied). The recantation does not alter this conclusion. Therefore, we affirm the postconviction trial court’s summary denial of this issue because the recantation does not present a reasonable probability of affecting the conviction or sentence.
 

 Giglio
 

 Alternatively, Davis asserts that the recantation establishes a claim under
 
 Giglio v. United States,
 
 405 U.S. 150, 153-54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), that the State knowingly presented false testimony against the defendant. A
 
 Giglio
 
 violation is demonstrated when (1) the prosecutor presented or failed to correct false testimony; (2) the prosecutor
 
 knew
 
 the testimony was false; and (3) the false evidence was material.
 
 See Guzman v. State,
 
 941 So.2d 1045, 1050 (Fla.2006). Once the first two prongs are established, the false evidence is deemed material if there is any reasonable possibility that it could have affected the jury’s verdict.
 
 See id.
 
 at 1050-51. Under this standard, the State has the burden to prove that the false testimony was not material by demonstrating it was harmless beyond a reasonable doubt.
 
 See id.
 
 at 1050;
 
 see also Mordenti,
 
 894 So.2d at 175. Thus, the standard applied under the third prong of the
 
 Giglio
 
 test is more defense friendly than the test set out in
 
 Strickler v. Greene,
 
 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), which is applied to a violation under
 
 Brady.
 
 Because
 
 Giglio
 
 claims present mixed questions of law and fact, we defer to those factual findings supported by competent, substantial evidence, but review de novo the application of the law to the facts.
 
 See Sochor v. State,
 
 883 So.2d 766, 785 (Fla.2004).
 

 We affirm the postconviction trial court’s summary denial of this claim because the motion failed to make a prima facie case of a
 
 Giglio
 
 violation. Specifically, Davis failed to include
 
 any
 
 allegations which demonstrate that the State had
 
 knowledge
 
 of the allegedly false statements made by Castle and Kearney during the capital trial. Neither the affidavit nor the motion indicates the identity of the individual who threatened Kearney. Davis merely asserted in his motion:
 
 “If
 
 pressure was placed on the witnesses to testify in a particular manner, then it was necessary that trial counsel be provided with such information so that he could effectively represent Mr. Davis.” (Emphasis supplied.) There is no indication that Davis has any evidence to support the
 
 Giglio
 
 claim beyond the unsworn assertion of Kearney that her testimony was prompted by threats from an unknown party. Without further evidence to demonstrate that the State knowingly presented false testimony, Davis is unable to satisfy the first two prongs of the
 
 Giglio
 
 test. Accordingly, we affirm the postconviction trial court’s summary denial of this claim.
 

 
 *533
 
 Ineffective Assistance
 

 Lastly, Davis advances that the newly discovered evidence established that his counsel provided ineffective assistance. Following the United States Supreme Court’s decision in
 
 Strickland, v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
 

 First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
 

 Maxtuell v. Wainwright,
 
 490 So.2d 927, 932 (Fla.1986) (citations omitted). Under this standard, Davis has failed to demonstrate that the recanted testimony had a reasonable probability of changing the outcome, which is a probability sufficient to undermine our confidence in the verdict.
 
 See Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052.
 

 In his motion, Davis failed to allege specific facts to establish either deficient performance or prejudice, which are necessary to demonstrate entitlement to an evidentiary hearing.
 
 See Jones v. State,
 
 998 So.2d 573, 587-88 (Fla.2008) (citing
 
 Rhodes v. State,
 
 986 So.2d 501, 513-14 (Fla.2008);
 
 Doorbal v. State,
 
 983 So.2d 464, 483 (Fla.2008);
 
 Spera,
 
 971 So.2d at 758). Here, the motion stated that the “circumstances surrounding [Kearney] and Castle’s trial testimony
 
 was not known to trial counsel
 
 or if it was known [then] trial counsel was ineffective in failing to inform the jury of the witnesses’ true motive for testifying.” (Emphasis supplied.) In addition, counsel stated during the
 
 Huff
 
 hearing that other than the record there was no further documentary evidence to prove these claims. Consequently, Davis failed to allege
 
 any
 
 specific facts that would establish ineffective assistance. This is a deficiency that could not be corrected through an amendment to the motion thereby rendering this claim legally insufficient.
 
 See Spera,
 
 971 So.2d at 755. Absent a specific allegation that trial counsel was informed that Castle lied with regard to the statement that Davis planned to “do away with” the victim, trial counsel could not be deficient for failing to pursue a recantation of testimony that was neither suspect nor clearly false. In other words, without defense counsel being informed of or discovering perjury, counsel would be in the dark as to its falsity. Counsel cannot be expected to seek recantations of every witness without some indication that the testimony was false. Even if Davis could amend the pleading to set forth specific facts establishing ineffective assistance of counsel, this would inevitably undermine his newly discovered evidence claim because trial counsel would have known of the perjury at the time of trial and would have needed to make some efforts during this time to establish due diligence. Thus, the motion clearly demonstrates that Davis has no sufficient allegations to support this claim.
 

 Further, Davis would not be able to demonstrate prejudice even if an eviden-tiary hearing were granted on this claim because the recantation does not establish a probability of changing the outcome, such that it undermines this Court’s confidence in the verdict.
 
 See Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052. Thus, we
 
 *534
 
 affirm the postconviction trial court’s summary denial of this claim.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the postconviction trial court’s denial of relief.
 

 It is so ordered.
 

 PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 QUINCE, C.J., recused.
 

 [1]
 

 . In addition, the trial court sentenced Davis to life imprisonment on the robbery conviction and five years' imprisonment on the grand theft conviction.
 
 See Davis v. State,
 
 928 So.2d 1089, 1102 (Fla.2005)
 
 (Davis III).
 
 Further factual details of the evidence presented during the capital proceedings can be found in our prior decisions.
 
 See Davis III,
 
 928 So.2d at 1102-04;
 
 Davis I,
 
 586 So.2d at 1040.
 

 [2]
 

 . Huff v. State, 622
 
 So.2d 982 (Fla.1993).
 

 [3]
 

 . We affirm the lethal-injection claim without further analysis because the decisions in
 
 Baze
 
 v.
 
 Rees,
 
 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), and
 
 Tompkins v. State,
 
 994 So.2d 1072, 1081 (Fla.2008),
 
 cert. denied,
 
 - U.S. -, 129 S.Ct. 1305, - L.Ed.2d - (2009), foreclose relief on this issue.
 
 See also Ventura v. State,
 
 2 So.3d 194, 200 (Fla.),
 
 cert. denied,
 
 - U.S. -, 129 S.Ct. 2839, 174 L.Ed.2d 562 (2009);
 
 Power v. State,
 
 992 So.2d 218, 220-21 (Fla.2008);
 
 Sexton v. State,
 
 997 So.2d 1073, 1089 (Fla.2008);
 
 Schwab v. State,
 
 995 So.2d 922, 933 (Fla.),
 
 cert. denied,
 
 - U.S. -, 128 S.Ct. 2996, 171 L.Ed.2d 911 (2008);
 
 Woodel v. State,
 
 985 So.2d 524, 533-34 (Fla.),
 
 cert.
 
 denied, - U.S. -, 129 S.Ct. 607, 172 L.Ed.2d 465 (2008);
 
 Lebron v. State,
 
 982 So.2d 649, 666 (Fla.2008);
 
 Schwab v. State,
 
 982 So.2d 1158, 1159-60 (Fla.2008);
 
 Lightbourne v. McCollum,
 
 969 So.2d 326, 350-53 (Fla.2007). Furthermore, an evidentiary hearing to present additional witnesses was unnecessary because the proposed testimony of these witnesses has previously been considered and rejected by this Court and therefore does not support a departure from our precedent.
 
 See Tompkins,
 
 994 So.2d at 1079-82 (discussing the testimony of the four individuals that Davis attempted to present).