DAVIS, Judge.
The State challenges the final order of the trial court granting Mark Gilson’s motion to dismiss the charge of attempted first-degree murder of a law enforcement officer due to the State’s destruction of certain evidence. We reverse.
In 1997, Gilson was convicted after jury trial of attempted first-degree murder of a law enforcement officer. The State alleged that during a traffic stop, Gilson shot Lee County Sheriffs Deputy Mark Cohen. Upon conviction, the trial court sentenced Gilson to forty years’ imprisonment with a twenty-five-year minimum mandatory. This court affirmed Gilson’s conviction and sentence. See Gilson v. State, 725 So.2d 1119 (Fla. 2d DCA 1998) (table decision).
On November 13, 2000, however, Gilson sought and was granted postconviction relief in the form of a new trial. As the State prepared to retry Gilson, both parties learned that certain evidence from the first trial had been destroyed despite the fact that it had been the subject of a protective order entered on April 4, 1997. Gilson moved to dismiss the charge on the basis that the destroyed evidence, which included Gilson’s car and the clothing Gil-son had been wearing on the night of the incident, was exculpatory and had been destroyed by the State in bad faith. Following a hearing, the trial court granted Gilson’s motion to dismiss, concluding that the evidence “was, at the very least, favorable to the defense as impeachment evidence” and that “the destruction of this evidence has prejudiced the defense because it deprives [Gilson] of the ability to receive a fair trial.” It is the trial court’s order dismissing the charge based on the destruction of evidence that the State now appeals.
The charges against Gilson arose from a traffic stop that resulted in gunfire being exchanged between an occupant of Gilson’s vehicle and Deputy Cohen. At Gilson’s first trial, Deputy Cohen testified that before stopping Gilson, he had pulled his patrol car alongside of Gilson’s vehicle. Deputy Cohen further testified that he observed that the driver was the only occupant of the vehicle. After he effectuated the traffic stop, Deputy Cohen exited his vehicle, but before he could approach the other car, a man exited the driver’s side of that vehicle and shot at the deputy, striking him in the leg. Deputy Cohen returned fire, and as the car sped off, he fired several shots into the vehicle. Gilson was later apprehended, wounded and hiding under a house in the general area.
Gilson, on the other hand, asserted at the first trial that although he was the driver, a man named Rick Roberts was riding in his backseat on the driver’s side. Gilson maintained that when Deputy Cohen stopped him that night, Roberts pushed his way out of the backseat and out the driver’s side door and began firing at Deputy Cohen. Gilson asserted that he then drove off as the officer fired at his vehicle.
Although all thirty-three items of evidence that were subject to the protective order put in place after the first trial were subsequently destroyed, Gilson’s motion to dismiss addresses only the evidentiary value of the clothing he was wearing on the night of the incident and the car he drove that night. In his motion to dismiss, Gil-son maintained that further forensic examination of his shirt and car would have impeached the State’s evidence and that the destruction of these items deprives him of the ability to obtain a fair trial. Gilson therefore argued that, pursuant to *148 Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the attempted first-degree murder charge must be dismissed.
The trial court agreed, concluding that because the evidence at issue was favorable to Gilson as impeachment evidence, Gilson had established a Brady violation.
On appeal, the State argues that the trial court erred in granting Gilson’s motion to dismiss because Gilson failed to establish both that the evidence was destroyed in bad faith and that he would be unable to obtain comparable evidence by other reasonably available means.
To establish a Brady violation, generally, “[t]he defendant must allege specific facts that, if accepted as true, establish a prima facie case that (1) the State possessed evidence favorable to the accused because it was either exculpatory or impeaching; (2) the State willfully or inadvertently suppressed the evidence; and (3) the defendant was prejudiced.”
State v. Buitrago, 39 So.3d 540, 541 (Fla. 2d DCA 2010) (alteration in original) (quoting Allen v. State, 854 So.2d 1255, 1259 (Fla.2003)). However, in Buitrago, this court further concluded that although the trial court in that case properly found a Brady violation, “whether [such a] due process violation was sufficiently severe to warrant dismissal of the case requires further consideration.” Id. at 542.
Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect’s defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.
California v. Trombetta, 467 U.S. 479, 488-89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (footnote omitted) (citation omitted). The State argues that Gilson failed to show that the evidence had an exculpatory value “that was apparent before the evidence was destroyed” or that he is now unable to obtain comparable evidence by other “reasonably available means.”
At the first trial, Gilson presented a misidentification defense. Although he admitted that he was driving the car, he testified that there was a second person in the car, seated in the backseat behind the driver. He testified that it was this second person who exited the car and began shooting at Deputy Cohen. According to Gilson, when the shooting began, he drove off and as he was leaving the scene, he was shot in the back by Deputy Cohen, who was firing into his car from the rear.
Asserting that he would pursue the same line of defense at his second trial, Gilson first argues that immediately after the incident, Deputy Cohen three times described the shooter as wearing a white, off-white, or “lighter colored” short-sleeved shirt, possibly a button-down. The shirt that Gilson was wearing at the time he was apprehended on the night of the shooting — the same shirt that was destroyed by the State — was a dark blue, long-sleeved shirt. As such he claims that he needs the shirt to impeach the officer’s testimony that he was the shooter.
We disagree. For impeachment purposes, a photograph of the shirt is comparable evidence. In fact, Gilson introduced a photo of the shirt into evidence for this purpose at his first trial during the cross-examination of the officer who first interviewed Gilson on the night of the shooting. That officer confirmed that the photograph accurately depicted what Gil-son was wearing when he was appre *149 hended. Subsequent to the hearing on the motion to dismiss, but prior to the trial court issuing its dismissal order, the State informed the court that photos of Gilson’s clothing were still available to Gilson.
Gilson also claims that he needs the shirt to refute the victim’s testimony that Gilson was the only occupant of the car that night. In support of his motion to dismiss, Gilson presented the sworn statement of a bouncer at a nearby club who made a statement to police that, on the night of the shooting, two men attempted to enter the club about an hour prior to the shooting. According to the bouncer’s statement, one man had on a black jersey-type shirt and the other “had on a white shirt on [sic] button-down ... it was opened and it was sloppy looking.” The man in the white shirt was acting “jittery, you know in the mood he wanted to leave,” and he said to the other man in the black shirt, “Come on, let’s get the f— out of here.” Gilson maintains that the shirt, along with the bouncer’s statement and Deputy Cohen’s description of the shooter, would establish that he was with another man on the night in question and that because Gilson was the one wearing a dark colored shirt, the other man, who was wearing the white or light-colored shirt, was the individual who Deputy Cohen saw shooting at him.
We conclude, however, that Gilson can make the same argument with a photograph of the shirt coupled with the officer’s testimony confirming that the photograph accurately depicts what Gilson was wearing on the night of the shooting. We can see no reason why the actual shirt would have to be introduced to assert this argument.
Finally, with regard to the shirt, Gilson argues that he needs it to impeach Deputy Cohen’s testimony that he shot Gilson in the abdomen. Gilson argued at the dismissal hearing below that the deputy said he shot the driver of the vehicle in the stomach. Accordingly, Gilson argued, if there was no bullet hole in the front of the shirt that he was wearing when he was arrested, it would prove his claim that although he may have been the driver of the stopped vehicle, he was not the person who exited the vehicle, started shooting at the deputy, and was shot in the stomach by the deputy. Furthermore, Gilson alleged that the “medical” testimony presented at the first trial was inconsistent as to whether Gilson was shot in the abdomen or the back. Gilson asserts that the shirt is necessary to establish that he was shot only in the back.
The State does not dispute Gilson’s claim that the photos of his clothes do not show any bullet holes. However, Gilson’s argument nevertheless fails for it is premised on a misstatement of the deputy’s testimony. The only testimony at the first trial from Deputy Cohen regarding his shooting the person who exited the vehicle came in response to Gilson’s attorney’s questions on recross-examination.
Q. Officer Cohen, was Mr. Gilson shot in the front or the back, do you know?
A. The front portion.
Q. Are you sure about that?
A. That’s what I am told.
Q. But you don’t have personal knowledge of that?
A. No.
Q. Okay.
A. As I was returning fire, he was always facing toward me.
Q. I am going to ask this in a different way. You don’t have any personal knowledge as to whether you shot Mr. Gilson in the stomach from the front?
A. No.
*150 Gilson has argued an issue that does not exist, that is, whether the shirt would impeach the deputy’s testimony that he shot Gilson in the stomach. Deputy Cohen testified that he has no personal knowledge of where he actually shot his attacker; thus the shirt would not be necessary to refute the deputy’s testimony.
With regard to the destruction of Gilson’s automobile, Gilson argued in his motion to dismiss as follows:
The materiality of this evidence is that [Gilson] has hired a reconstructionist in order to recreate the shooting incident to show that [he] was shot in the back, and not in the front as Deputy Cohen testified. The expert would need to examine the automobile to measure angles for trajectory purposes. This avenue of defense has been forever foreclosed due to the actions of the police.
At the hearing on the motion to dismiss, Gilson’s expert testified that he would need to examine the car to determine trajectories “if there were any.”
Initially we note that this argument must fail because again, it is based on the inaccurate premise that Deputy Cohen testified that he shot Gilson in the abdomen. Additionally, this argument does not meet the requirements for a Brady violation. At the first trial, only photographs of the car were introduced by either party, and Gilson made no attempt to have the car inspected by an expert at that time. Furthermore, even if Gilson’s expert was able to examine the car and came to the conclusion that a bullet that struck Gilson was fired from behind the car through the driver’s seat, such evidence would only confirm Deputy Cohen’s testimony that he continued to shoot toward the car as the car drove away. Photographs of the car show blood on the upright backrest of the driver’s seat, as well as a hole in the driver’s seat. Because the photographs support Gilson’s claim that he was shot in the back as he drove away, the actual car is not necessary to make this point. Furthermore, we cannot say that the exculpatory nature of Gilson’s car should have been apparent to the State or the sheriff’s office at the time the evidence was destroyed. See Buitrago, 39 So.3d at 541.
Based on our review of the record, as set out herein, the evidence does not support the trial court’s conclusion that Gilson met his burden of establishing a Brady violation. See Davis v. State, 26 So.3d 519, 531 (Fla.2009) (stating that the defendant bears the burden of establishing a Brady violation). Because Gilson did not satisfy his burden below, it was an abuse of discretion for the trial court to grant his motion to dismiss, and we must reverse. See State v. Balezos, 765 So.2d 819, 822 (Fla. 4th DCA 2000) (“A trial court’s decision to grant a motion to dismiss will not be reversed absent an abuse of discretion.”).
Reversed and remanded for further proceedings.
CRENSHAW and MORRIS, JJ., Concur.