DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

LUIS M. HARRIS,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D22-1355

_____

September 29, 2023

Appeal pursuant to Fla. R. App. P. 9.141(b)(2) from the Circuit Court for
Hillsborough County; Michelle Sisco, Judge.

Luis M. Harris, pro se.

Ashley Moody, Attorney General, and Taylor A. Schell, Assistant Attorney
General, for Appellee.

NORTHCUTT, Judge.

Luis M. Harris appeals the summary denial of his motion for
postconviction relief filed under Florida Rule of Criminal Procedure
3.850.  We reverse and remand for further proceedings.

In January 2011, Harris was tried on charges arising from an
incident near the corner of Bayshore and Bay to Bay Boulevards in

Tampa. The jury found him guilty of sexual battery (victim over twelve) (count one), kidnapping (count two), falsely impersonating an officer (count three), fraudulent use of personal information (count four), fraudulent use of a credit card (more than two times) (count five), and grand theft ($300 to $5,000) (count six) based on the incident. The trial court sentenced Harris to prison on counts one through five and dismissed count six. On appeal, we per curiam affirmed his convictions and sentences. *See Munuzuri-Harris v. State*, 117 So. 3d 417 (Fla. 2d DCA 2012) (table decision). Our mandate issued on December 31, 2012. Harris filed various postconviction motions in the following years, but his convictions stood.

In October 2021, Harris began the proceedings leading to this appeal when he filed a sworn "PETITION FOR RELIEF FROM JUDGMENT BASED ON A *BRADY*[1] VIOLATION AND NEWLY DISCOVERED EVIDENCE . . . ." He filed an amended petition in February 2022, adding a claim for ineffective assistance of counsel. In virtually identical March 4 and 25, 2022, orders, the postconviction court treated the initial petition as a motion filed pursuant to rule 3.850 and denied it, but it did not address the amended petition.

Harris's motions were untimely. *See* Fla. R. Crim. P. 3.850(b) (providing a two-year time limit to file a motion for postconviction relief); *Beaty v. State*, 701 So. 2d 856, 857 (Fla. 1997) (stating that the two-year period for filing a motion for postconviction relief begins to run upon issuance of the direct-appeal mandate). They were also successive. *See* Fla. R. Crim. P. 3.850(h) (authorizing a postconviction court to dismiss a second or successive 3.850 motion). However, Harris alleged that his

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

motions were based on newly discovered evidence—an exception to the bars against untimely and successive motions in certain situations.  *See* Fla. R. Crim. P. 3.850(b)(1), (h).

Harris alleged that in July 2021 he received an anonymous letter from a retired Tampa Police Department detective on city letterhead.[2]  In this letter, the detective claimed that there are thirteen videos from traffic cameras and building security cameras and two videos from news and weather cameras from Fox News and Bay News 9 that all show that no crimes occurred at the subject location on the night of Harris's charged crimes.  Harris alleged that after receiving the letter, he contacted the city of Tampa via public records requests and that he was told there are "videos in evidence" but that he would have to contact the State Attorney's Office about them.  He then requested information via a public records request from the State Attorney's Office and received a letter stating that surveillance videos are exempt from public disclosure.

Harris argued that the video evidence is favorable to his defense because it demonstrates that he did not commit a kidnapping or sexual battery while impersonating a police officer on Bayshore Boulevard.  He alleged that the video evidence is exculpatory material and can be used to impeach the victim's fabricated story.  Specifically, he claimed the videos would show that (1) his vehicle was never in the median of

---

[2] The State points out that rule 3.850(c) specifies that a defendant who files a newly discovered evidence claim must attach an affidavit from any person whose testimony is necessary to factually support the claim for relief or provide an explanation why the affidavit could not be obtained.  The State argues that Harris's motion was deficient for lack of such an affidavit or explanation.  But the motion did contain an explanation: it stated that the letter was anonymous, thus making it impossible to obtain an affidavit from the author.

Bayshore Boulevard; (2) he neither stood in the median nor walked out into the traffic lanes on Bayshore; (3) there was never any "blue" strobe light/laser; (4) he never used his vehicle to conduct a "police-style" stop of the victim; (5) he and the victim never stood on the streets of Bayshore or Bay to Bay; (6) the victim was never restrained by handcuffs; and (7) the victim is shown unrestrained and not in distress, moving around freely in the parking lot at Bay to Bay and Bayshore with her car, cellphone, and laptop.

Based on information in the anonymous letter, Harris further alleged that the State acted in bad faith when three detectives willfully suppressed and deliberately failed to disclose the video evidence. He claimed that if the jury had been aware of the video evidence, there is a reasonable probability that the results of the trial would have been different or that he would have been acquitted.

In summarily denying Harris's rule 3.850 motion, the postconviction court found that the videos Harris identified do not qualify as newly discovered evidence. "First, in order to be considered newly discovered, the evidence 'must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence.' " *Jones v. State* (*Jones II*), 709 So. 2d 512, 521 (Fla. 1998) (quoting *Torres–Arboleda v. Dugger*, 636 So. 2d 1321, 1324–25 (Fla. 1994)). "Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." *Jones II*, 709 So. 2d at 521 (quoting *Jones v. State* (*Jones I*), 591 So. 2d 911, 915 (Fla. 1991)). In contemplating the second prong of *Jones II*, "the trial court should initially consider whether the evidence would have been admissible at trial or whether there would have been any evidentiary

4

bars to its admissibility." *Id.* (citing *Johnson v. Singletary*, 647 So. 2d 106, 110–11 (Fla. 1994)).

Here, the postconviction court found it suspicious that the detective's letter as well as the letter from the Tampa Police Department were unsigned, and it questioned their authenticity. The court also found that with due diligence Harris or his counsel could have discovered, investigated, and obtained the camera footage from traffic cameras and building security cameras.

On appeal, Harris argues that the postconviction court erred when it (1) failed to rule on his timely filed amended motion; (2) failed to attach any records that conclusively refute his claim; (3) failed to address his *Brady* claim; and (4) failed to hold an evidentiary hearing to determine the authenticity of the letters. We agree.

First, a movant may amend his postconviction motion at any time before the postconviction court disposes of the motion or orders the State to respond. *See* Fla. R. Crim. P. 3.850(e) ("A motion may otherwise be amended at any time prior to either the entry of an order disposing of the motion or the entry of an order pursuant to subdivision (f)(5) or directing that an answer to the motion be filed pursuant to (f)(6), whichever occurs first."); *see also Haspel v. State*, 247 So. 3d 4, 6 (Fla. 4th DCA 2018) (reversing in part for failing to address the claims raised in a supplemental motion filed before the court issued an order). The postconviction court should have ruled on Harris's amended motion, which included a new ineffective-assistance-of-counsel claim regarding counsel's failure to obtain the videos.

Second, "[w]hen reviewing the summary denial of a motion for postconviction relief, this court applies de novo review and 'must accept the movant's factual allegations as true to the extent that they are not

5

refuted by the record.' " *Martin v. State*, 205 So. 3d 811, 812 (Fla. 2d DCA 2016) (quoting *Jennings v. State*, 123 So. 3d 1101, 1121 (Fla. 2013)). Here, the postconviction court did not attach records that refuted Harris's factual allegations that he had recently received the letter from a retired detective alerting him to the existence of these videos, that he requested records from the Tampa Police Department and the State Attorney's Office, and that both of them appeared to confirm the existence of the videos. The court attached nothing to reflect that the videos were disclosed to defense counsel or that they would not be exculpatory or impeaching.

Third, to establish a *Brady* claim, the defendant must show that "(1) the State possessed evidence favorable to the accused because it was either exculpatory or impeaching; (2) the State willfully or inadvertently suppressed the evidence; and (3) the defendant was prejudiced." *Allen v. State*, 854 So. 2d 1255, 1259 (Fla. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). Harris reasonably established a facially sufficient *Brady* claim and argued that counsel exercised due diligence by filing a demand for discovery. However, the postconviction court failed to address the claim.

Fourth, and finally, "[t]he determination of whether the statements are true and meet the due diligence and probability prongs of *Jones II* usually requires an evidentiary hearing to evaluate credibility unless the affidavit is inherently incredible or obviously immaterial to the verdict and sentence." *Davis v. State*, 26 So. 3d 519, 526 (Fla. 2009). Although it may be unusual that the detective's and the police department's letters are unsigned, the letters are not inherently incredible. Harris claims that all legal mail is inspected and verified by prison officials. He notes that there is a machine-made postage mark on both envelopes and that the

6

police department letter has a reference number. These facts suggest that a proper evidentiary inquiry may corroborate or refute Harris's claim that he received them. In any event, we must accept the claim as true because it is not refuted by the record.

On remand, the postconviction court must either hold an evidentiary hearing or attach records that conclusively refute Harris's claims, including the claim in his amended motion.

Reversed and remanded.

SILBERMAN and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.