FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA
_____

No. 1D2023-2052
_____

ERIC MCKINNEY,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____


On appeal from the Circuit Court for Wakulla County.
J. Layne Smith, Judge.


April 16, 2025

BILBREY, J.


    Eric McKinney appeals the denial of his motion for postconviction relief after an evidentiary hearing addressing his claim of newly discovered evidence. *See* Fla. R. Crim. P. 3.850(b)(1). Because the postconviction court's credibility determinations were supported by competent, substantial evidence, we affirm the final order denying relief. *See Blake v. State*, 180 So. 3d 89, 123 (Fla. 2014).

    In 2002, a jury found McKinney guilty of three felonies, and he was sentenced to life imprisonment. One count was reversed on direct appeal. *See McKinney v. State*, 860 So. 2d 452 (Fla. 1st DCA 2003). McKinney was resentenced, including reimposition of the life sentence in October 2003, and no appeal was taken. Thus,

the judgment and sentence became final 30 days later. *See Barco v. State*, 324 So. 3d 606, 607 (Fla. 2d DCA 2021).

A motion for postconviction relief under rule 3.850, Florida Rules of Criminal Procedure, must be filed less than two years after the judgment and sentence become final. This deadline expired in November 2005. However, a motion brought on grounds of newly discovered evidence may be filed "within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence." Fla. R. Crim. P. 3.850(b)(1).

McKinney's motion for postconviction relief was filed in November 2021. He alleged that two of the witnesses from his jury trial in 2002 had since recanted their testimony. McKinney further alleged that due to his incarceration and lack of counsel, he did not discover these recantations until he retained counsel in 2020. The postconviction court's final order did not address the timeliness of McKinney's motion instead addressing the merits. Thus, it can be inferred that the postconviction court accepted McKinney's explanation for the delay in his discovery of the new evidence.

At trial in 2002, Mario Kilpatrick testified that he and McKinney committed the burglary and sexual battery together. Kilpatrick was separately charged, and he entered a plea after agreeing to testify in McKinney's trial. Afterward, Kilpatrick filed a motion for postconviction relief in his separate case. In June 2004, Kilpatrick testified at his evidentiary hearing that his plea was involuntary and unknowing because he later discovered that the State's case against him was much weaker than he thought when he entered his plea. Kilpatrick testified that he would have gone to trial had he known of the lack of DNA evidence (even though his DNA was found at the scene), and that his mistaken belief that he should enter his plea also caused him to testify falsely at McKinney's trial. Kilpatrick's motion for postconviction relief was ultimately denied, and the denial was affirmed on direct appeal. *See Kilpatrick v. State*, 914 So. 2d 958 (Fla. 1st DCA 2005).

McKinney bases his first recantation claim on Kilpatrick's testimony at his own postconviction hearing that was contrary to Kilpatrick's testimony implicating McKinney at McKinney's trial. Kilpatrick did not testify at McKinney's postconviction evidentiary

hearing.  Rather, McKinney's claim is based on the 2004 transcript of Kilpatrick's postconviction hearing.[1]  In its final order denying McKinney's motion for postconviction relief, the postconviction court applied the correct law to Kilpatrick's contrary testimony. The postconviction court noted that a new trial will be warranted only if "the court is satisfied that the recantation is true" and that "the recanted testimony would probably render a different outcome in the proceeding."  *Davis v. State*, 26 So. 3d 519, 526 (Fla. 2009); *see also Armstrong v. State*, 642 So. 2d 730, 735 (Fla. 1994) (citations omitted) ("[I]t is the duty of the court to deny a new trial where it is not satisfied that such [recantation] testimony is true."). The postconviction court also relied on *Barros v. State*, 254 So. 3d 1186, 1187 (Fla. 5th DCA 2018) (*citing Archer v. State*, 934 So. 2d 1187, 1196 (Fla. 2006)), for the rule of heightened scrutiny of postconviction claims of a witness' recantation because "Florida courts recognize that 'recantations are exceedingly unreliable.'"

The postconviction court considered Kilpatrick's testimony at McKinney's trial about why he was at the victims' home, how he chose that home, and that "law enforcement had confirmed [Kilpatrick] had left his DNA at the crime scene."  The court noted that the jury "considered Mario Kilpatrick's truthfulness, his deal with the State capping his sentence, and any motives he had to lie about Eric McKinney" before the jury found McKinney guilty at trial.  Determining that his testimony at McKinney's trial was more credible than his later, contrary testimony at his own postconviction hearing, the postconviction court found it was not satisfied Kilpatrick's recantation was true.  And the court found that Kilpatrick's recantation did not undermine the court's confidence in the jury verdict in McKinney's trial.

---

[1] McKinney, through counsel, moved that the postconviction court take judicial notice of the court file from Kilpatrick's case. That court file included the transcript of Kilpatrick's 2004 postconviction hearing where he recanted.  At McKinney's evidentiary postconviction hearing, McKinney moved that the transcript of Kilpatrick's recantation be admitted into evidence. The State did not object, and the transcript was admitted.

The postconviction court's finding Kilpatrick's recantation untrue was supported by the competent, substantial evidence of Kilpatrick's testimony at McKinney's trial. Without a showing that Kilpatrick testified falsely at McKinney's trial with the State's knowledge of such false testimony, no *Giglio*[2] violation was shown. McKinney fails to show reversible error in the postconviction court's rejection of Kilpatrick's recantation as untrue and, as a result, denying McKinney's claim that the State committed a *Giglio* violation with Kilpatrick's trial testimony implicating McKinney.

McKinney's second recantation claim was based on an affidavit of the sexual assault victim, G.P. The affidavit was dated October 25, 2020, about 18 years after McKinney's trial and G.P.'s testimony there. At trial, the other victim (J.R.) identified Kilpatrick as one of the burglars/assailants but neither he nor G.P. could identify the second attacker. G.P. could only testify that one of them was about five inches taller than the other, and that the second attacker's body type and size were not "different" than that of McKinney.

In her 2020 affidavit, G.P. stated that she now knew that McKinney was taller than Kilpatrick and was now sure that McKinney was not the second attacker. She stated that she had expressed her doubts about McKinney as the second attacker before trial, by telling "the victim witness advocate" and the assistant state attorney that she thought McKinney was too tall to be the second perpetrator. She did not say she lied in her trial testimony about the second attacker's body type and size. At trial, G.P. had not been asked about her doubts, and she did not know if her concerns were passed on to the defense.

---

[2] *Giglio v. United States*, 405 U.S. 150 (1972) (holding that presentation of known false evidence, or failure to correct it by prosecution when it appears, violates due process; nondisclosure of evidence affecting credibility of a witness by prosecution violates defendant's right to due process).

G.P. testified at McKinney's postconviction hearing that she voiced her concerns repeatedly to personnel at the state attorney's office but was rebuffed and told that her concerns were unwarranted. She acknowledged that during her trial testimony, she was not asked to identify McKinney as the second perpetrator.

At the evidentiary postconviction hearing on McKinney's motion, attorney Lynn Thompson testified. Thompson was McKinney's trial defense counsel, and he testified that before trial he never received any discovery or notification of a statement by G.P. to the State expressing any doubts by G.P. about McKinney's identity. Attorney Thompson was adamant that if he had received such information, he would have questioned G.P. in her deposition and cross-examined her at trial about her uncertainty. Thompson opined that if the State received this information and failed to provide it to him, a *Brady*[3] violation would have occurred.

Ronald Flury, the prosecutor for the State at McKinney's trial and now a circuit judge, also testified at McKinney's evidentiary hearing. He denied that G.P. told him she believed McKinney was not the second perpetrator. Judge Flury emphasized that if G.P. had said before trial that McKinney could not have been the second person because of his height or build, he would have definitely disclosed that information to opposing counsel and reevaluated the case.

The postconviction court compared G.P.'s testimony at McKinney's trial and her statements at McKinney's sentencing hearing to her later testimony at the postconviction hearing. The court found G.P.'s "current position . . . at odds with the words she spoke" at the sentencing hearing. And the court found Flury's testimony "more credible and persuasive."

Applying the standard of proof under *Davis* and *Barros*, as it had done for Kilpatrick's recantation, the postconviction court found it was not satisfied that G.P.'s recantation was true. The

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963) (requiring disclosure of evidence that may exonerate a defendant); *see also* Fla. R. Crim. P. 3.220(b) (listing a prosecutor's discovery obligations when a defendant seeks discovery).

court did not believe G.P. told Flury "or anyone else" that "she doubted Eric McKinney was the unknown perpetrator." The court concluded that G.P.'s current belief that McKinney could not have been the unknown assailant was not a true recantation of her testimony at trial and at McKinney's sentencing. Finally, the court found that G.P.'s current affidavit and testimony at the postconviction hearing did not undermine the court's confidence in the jury's verdict. The court denied McKinney's claim that the State violated *Brady* by failing to provide the defense with exculpatory evidence without discussion because the *Brady* claim depended on the court's finding that G.P.'s testimony that she provided such evidence to the State true.

"Appellate courts do not 'reweigh the evidence or second-guess the circuit court's findings on the credibility of witnesses.'" *Lambrix v. State*, 39 So. 3d 260, 268 (Fla. 2010) (citation omitted). In *Smith v. State*, 330 So. 3d 867, 886 (Fla. 2021), the Supreme Court affirmed the denial of postconviction relief based on the postconviction court's determination that "trial counsel's testimony was more credible than Smith's testimony and Smith's testimony was wholly inconsistent with the evidence presented at trial and the evidentiary hearing." Because trial counsel's testimony in *Smith* was competent, substantial evidence to support the postconviction court's rejection of Smith's testimony, the Supreme Court stated, "we will not substitute our judgment for that of the [postconviction] court on the credibility of the witnesses." *Id.*; *see also Blake*, 180 So. 3d at 123.

Similar to *Smith*, the postconviction court found former prosecutor Flury's testimony more credible than G.P.'s recantation statements eighteen years after the trial. Because Flury's testimony as well as G.P.'s previous trial testimony and statements at McKinney's sentencing constituted competent, substantial evidence to support the postconviction court's finding her more recent recantation untrue, we decline to substitute our judgment for that of the postconviction court on the credibility of the witnesses.

For all these reasons, the final order denying postconviction relief on McKinney's new evidence claim and the dependent *Brady* and *Giglio* violation claims is

6

AFFIRMED.

LEWIS and WINOKUR, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Wade M. Whidden of Whidden Law, Tampa, for Appellant.

James Uthmeier, Attorney General, and Robert Charlie Lee, Assistant Attorney General, Tallahassee, for Appellee.

7